EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PEDRO TORIBIO LEDÉE RAMÍREZ, acusado y apelante.

*Número:* CR-73-78          *Resuelto:* 17 de octubre de 1974

*Benigno Alicea Alicea,* abogado del apelante; *Myriam Naveira de Rodón, Procuradora General,* y *Magda E. Haidar de Martí, Procuradora General Auxiliar,* abogadas de El Pueblo.

EL JUEZ ASOCIADO SEÑOR MARTÍN emitió la opinión del Tribunal.

El apelante fue acusado de tres violaciones en grado subsiguiente a la Ley de Drogas de 1959, consistentes en la posesión, transportación y ocultación y venta de heroína por hechos alegadamente acaecidos en 25 de junio de 1970. 24 L.P.R.A. sec. 974z(2). Celebrado el juicio por tribunal de derecho, después de haber renunciado a su derecho constitucional a juicio por jurado, el tribunal de instancia encontró al apelante culpable de las infracciones de "posesión" y "transportación y ocultación" de una droga narcótica por virtud de sentencia dictada en 18 de diciembre de 1970 y le absolvió de la imputación de venta. No conforme con el fallo condenatorio apeló ante nos.

En apelación, se plantea como único error el que el tribunal a quo declaró culpable al apelante en los delitos de "posesión" y "transportación u ocultación" alegando que se fundó "en prueba increíble que no rebate la presunción de inocencia que acompaña a todo acusado." En otras palabras, se ataca en apelación la apreciación que de la prueba hizo el tribunal de instancia.

La única prueba testifical de cargo consistió en la declaración del policía Luis Sánchez Morales. Declaró el policía Sánchez, que el día 25 de junio de 1970, como a las 9:45 de la

mañana, mientras se encontraba frente a la plaza pública de Guayama en traje de paisano, vio cerca de él al apelante, con dos individuos y una mujer. (T.E. págs. 5 y 10.) El policía observó al apelante hacerle una "señal" al grupo de personas mencionado, los que le siguieron a pie por la Calle Derkes hasta llegar a una residencia marcada con el número 108. La "señal" y el consiguiente movimiento de dichas personas despertaron la sospecha del policía quien decidió seguirlos. Al llegar el grupo a la mencionada residencia vio a los dos individuos (que formaban parte del grupo) cruzar al otro lado de la calle y sentarse en la escalera de entrada de una casa o negocio que aparentaba estar abandonado o cerrado. (T.E. pág. 6.) El apelante y la mujer penetraron en el garaje de la residencia numerada 108, quedando la puerta del garaje totalmente abierta, mientras el policía se acercaba al garaje y se colocaba frente al mismo. (T.E. págs. 6, 13, 20.) La posición o lugar en que se encontraba el policía Sánchez, según él mismo admite, resultaba ser de frente—cara a cara—a la mujer y el apelante dándole la espalda. Poco después el declarante cambió su posición moviéndose al lado izquierdo del garaje, hacia la esquina del garaje, "en forma de ángulo". Al policía Sánchez situarse en la esquina del garaje logró observar a la mujer abrir su cartera y sacar dinero a la vez que el acusado, de espaldas al testigo, le entregaba un sobre blanco. El policía, creyendo que podía tratarse de una transacción de drogas, penetró súbitamente en el garaje; y acto seguido vio al acusado tirar un gotero con una aguja hipodérmica al aire que cayó sobre un "tablero" que allí había, y escapar por la puerta del garaje que daba acceso a la propia casa del apelante. Observó entonces a la mamá del apelante que salía al balcón de la casa. El policía no persiguió al acusado por temor de que se escapara la mujer, a quien detuvo, ocupándole la envoltura de papel que resultó contener heroína. También se incautó el policía Sánchez de la aguja hipodérmica con el gotero y una "chapita ahumada" que se encontraban en el

"tablero" aludido. (T.E. pág. 8.) Atestó el policía Sánchez que no logró ocupar el dinero que estaba en manos del acusado por haber huido éste con el dinero. (T.E. pág. 24.) Declaró también que se encaminó a San Juan, al laboratorio, para que el contenido del sobre fuera analizado. (T.E. págs. 15, 25.) El apelante fue arrestado más tarde en el día por la policía de Guayama.

Aseguró el testigo que conocía al apelante hacía como 6 ó 7 años, que había estudiado con él en la "Vocacional" y además porque a menudo visitaba Guayama (T.E. pág. 4), y que le conocía por el sobrenombre de Papo. (T.E. pág. 5.) Manifestó que suponía que el acusado lo conocía ya que habían hablado y se habían visto en varias ocasiones. (T.E. págs. 11–12.) Dijo que la residencia número 108 pertenece al acusado. (T.E. págs. 11–12.) Declaró además que nunca había visto antes a la testigo Carmen Luz de Jesús Vázquez, quien fue la única testigo de la defensa y quien fue reconocida en corte por el policía Sánchez como la mujer arrestada por él en el garaje de la residencia número 108 en 25 de junio de 1970.

La testigo de la defensa admitió ser la mujer arrestada por el policía Sánchez en relación con los hechos relatados. Esta se había declarado culpable de los cargos de "posesión" y "transportación u ocultación" de una droga narcótica en relación con los mismos hechos imputados al apelante, y había declarado a favor de éste en la vista preliminar celebrádale a este último. Declaró la testigo que había llegado de Brooklyn, donde nació y fue criada, unos días antes de la ocurrencia de los hechos en este caso; que ese día ella iba por la plaza acompañada de su hermano y su sobrino; que éstos reconocieron allí al individuo que les había vendido anteriormente unas bolsas que en lugar de heroína contenían sal; que se dirigió a dicho individuo y le acompañó al garaje aludido en la fecha de los hechos en relación con una transacción de drogas; pero negó que el individuo aludido que estuvo allí con ella en esa fecha fuera el acusado apelante. (T.E. págs. 30, 31, 32, 35,

42.) Describió al "muchacho" en cuestión que estuvo con ella en el lugar de los hechos, como "más trigueño", "de más pelo", "más alto", y "un poco más delgado" que el acusado-apelante. (T.E. pág. 35.) Admitió también la testigo ser adicta a drogas. (T.E. pág. 33.)

Examinada la transcripción de las declaraciones del testigo de cargo, así como la de la testigo de defensa a quien el tribunal sentenciador no dio crédito alguno, a la luz de la norma reiterada por este Tribunal de respetar la apreciación justiciera que hagan los jueces de instancia de la prueba a ellos sometida, concluimos que no se cometió el error que impugna la prueba de cargo por el fundamento de ser increíble. El tribunal dirimió el conflicto de prueba en contra del apelante.

En un "señalamiento adicional" el apelante reclama el alivio de sus sentencias en virtud del artículo 602(a) de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2602(a) ([1]) (en ocasiones denominada "la nueva Ley de Sustancias Controladas").

Se trata de convicciones por los delitos de "posesión" y "transportación u ocultación" de heroína en grado subsiguiente bajo la Ley de Narcóticos de 1959 (24 L.P.R.A. secs. 973, 974z(2).

---

([1]) El Art. 602(a) de la nueva Ley de Sustancias Controladas dispone lo siguiente: "Las acusaciones pendientes por cualquier violación a las leyes o partes de leyes derogadas por este Capítulo, que ocurra con anterioridad a la fecha de vigencia del mismo se seguirá tramitando bajo la ley vigente al momento de haberse cometido la susodicha violación. *Si la violación por la cual se ha acusado es similar a las que se incluyen en este Capítulo, se aplicarán las penalidades dispuestas por este Capítulo, si éstas son menores que las penalidades bajo la legislación anterior.*" (Énfasis suplido.) 24 L.P.R.A. sec. 2602(a).

El Art. 608, en su "disposición transitoria" también representa. los anhelos de lenidad del legislador puertorriqueño, al proveer, en lo que es aquí pertinente: "Las disposiciones del inciso (b) del Artículo 404 de esta ley y las penalidades prescritas en el inciso (a) de dicho Artículo 404, serán aplicables y beneficiarán a toda persona que, a partir de la fecha de vigencia de dicho artículo sea convicta de ilegalmente poseer cualquier sustancia controlada aun cuando la acusación, en su caso, hubiere sido radicada al amparo de legislación anterior."

Por estar el caso de autos pendiente de resolución ante nos en grado de apelación a la fecha en que entraron en vigor las disposiciones de la Ley de Sustancias Controladas que aquí se invocan (Arts. 404(a) y 602(a)) debemos investigar si ésta comprende delitos similares a los de "posesión" y "transportación u ocultación" por los que fue convicto el apelante bajo la anterior Ley de Narcóticos y si los mismos aparejan penalidades menores a las dispuestas por dicha ley anterior. En *Pueblo v. Rosario Cintrón*, 102 D.P.R. 82 (1974), dijimos que la Sec. 404(a) de la Ley de Sustancias Controladas, al referirse al simple poseedor, comprende e incluye en su sanción penal los actos punibles de "posesión" y de "transportación u ocultación" cuando este último acto no es más que la "posesión en movimiento" de aquel que oculta y transporta la sustancia controlada sobre su persona de un sitio a otro. Sin embargo, dicha nueva ley establece el acto de "transportar u ocultar" como delito separado en relación con el fabricante o traficante que, como parte de su comercio ilegal, realice tales actos. Véase 24 L.P.R.A. sec. 2401(a)(1), (a)(2).

■ No tiene consecuencia jurídica de importancia, para propósitos de la cuestión que examinamos, la circunstancia de que el calificativo de "subsiguiente" bajo la anterior Ley de Narcóticos y el de la nueva Ley de Sustancias Controladas no sean similares. La Ley de Narcóticos de 1959 específicamente disponía que la alegación de subsiguiente procedía en aquellos casos en que el acusado hubiere sido "previamente convicto por violar cualesquiera de las disposiciones de este capítulo o de las leyes que por este capítulo se derogan, así como las leyes sobre narcóticos de los Estados Unidos o sus estados y territorios." 24 L.P.R.A. sec. 975d. En el presente caso el apelante había sido convicto previamente bajo una ley federal de narcóticos. En contraste con la Ley de Narcóticos de 1959, la nueva Ley de Sustancias Controladas no contiene una disposición de carácter general sobre los delitos subsiguientes; sino que la Ley vigente trata de manera singular el grado subsiguiente en

los delitos que la misma establece, dependiendo del delito en cuestión. (²) La disparidad es aún más evidente en el delito de posesión, que es el que nos ocupa, pues el calificativo de subsiguiente sólo se refiere a "convicciones previas, que sean firmes, bajo este inciso". 24 L.P.R.A. sec. 2404 (a).

■ Tal desemejanza en el concepto de "reincidencia" entre la Ley de Narcóticos de 1959 y la nueva Ley de Sustancias Controladas no debe provocar el despojo al apelante de los beneficios de la mitigación de penas que permite el Art. 602 (a) de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2602 (a), conjuntamente con el Art. 608, en su disposición transitoria. Las violaciones de la Ley de Narcóticos de 1959 por las cuales se procesó al apelante son semejantes al delito de posesión tipificado en la vigente Ley de Sustancias Controladas, *Pueblo* v. *Rosario Cintrón*, supra. En innumerables ocasiones hemos afirmado que la alegación de subsiguiente no constituye la imputación de un delito en sí, ni altera en forma alguna los elementos constitutivos del delito o delitos imputados. Ella se hace con el propósito único de que al acusado se le imponga la pena más severa fijada por el estatuto. *Pueblo* v. *Santiago Padilla*, 100 D.P.R. 782 (1972), cita precisa a la pág. 785; *Pueblo* v. *Arteaga Torres*, 93 D.P.R. 148 (1966), cita precisa pág. 152; *Pueblo* v. *Cabán Rosa*, 92 D.P.R. 866 (1965), cita precisa a la pág. 872; *Sánchez* v. *Angeli*, 80 D.P.R. 154 (1957), cita precisa a la pág. 155; *González* v. *Rivera, Jefe Penitenciaría*, 71 D.P.R. 786 (1950), cita precisa a la pág. 787; *Pueblo* v. *Cancio*, 53 D.P.R. 547 (1938), cita precisa a la pág. 549.

■ Reconocida la similaridad entre los delitos por los cuales fue encausado el apelante—posesión y transportación y ocultación de heroína en grado subsiguiente—bajo la Ley de Narcóticos de 1959 y el delito de posesión de sustancias controladas estatuido en el Art. 404 (a) de la vigente Ley de

---

(²) Pueden verse: 24 L.P.R.A. secs. 2401 (b) (1) (A), 2405 (b), 2413.

Sustancias Controladas, sólo nos quedaría determinar si las sanciones provistas para el infractor reincidente del Art. 404 (a) son más benignas que las penalidades prevenidas por la Ley de 1959 para los delitos de posesión y transportación u ocultación en grado subsiguiente. La respuesta es en la afirmativa. La pena para el reincidente bajo la Ley de 1959 era de 10 a 40 años con multa opcional hasta $20,000.00 (³) (24 L.P.R.A. secs. 974dd, 974z(2)); mientras que la penalidad bajo la nueva Ley de Sustancias Controladas para el subsiguiente en posesión para consumo propio es de 2 a 6 años de prisión con multa opcional hasta $10,000 (24 L.P.R.A. sec. 2404(a)) hasta el 31 de mayo de 1972.

Nuestra misión judicial en este caso no termina aquí pues para darle eficacia real y completa a nuestra delicada y fundamental función de dispensar justicia y reconocer derechos, debemos investigar si el apelante es acreedor a las penalidades *originales* del Art. 404(a).

Cuando se aprueba la Ley de Sustancias Controladas en 23 de junio de 1971 se estatuye, entre otros, el delito de posesión *para consumo propio* en el Art. 404(a), disponiéndose una penalidad de uno (1) a tres (3) años de prisión y multa opcional que no podía exceder de $5,000. Si el infractor reincidía en el mismo delito podía ser castigado con una pena mínima de dos (2) años y máxima de seis (6) años de reclusión penitenciaria y multa discrecional hasta $10,000. Ya formaba parte de ese cuerpo legal en 1971 la lenificación de penas permitida por los Arts. 602(a) y 608, en su "disposición transitoria". (⁴)

---

(³) Al apelante se le condenó a cumplir concurrentemente de 10 a 15 años de presidio con trabajos forzados.

(⁴) La "disposición transitoria" original del Art. 608 proveía, en su parte pertinente, que las disposiciones y penalidades de los incisos (a) y (b) del Art. 404 "serán aplicables y beneficiarán a toda persona que, a partir de la fecha de vigencia de dicho artículo sea convicta de ilegalmente poseer cualquier sustancia controlada *para consumo propio,* aun cuando la acusación, en su caso, hubiere sido radicada al amparo de legislación anterior. (Énfasis suplido.)

El 31 de mayo de 1972 se enmiendan algunas disposiciones de la Ley de Sustancias Controladas, entre ellas los Arts. 404 y 608. La enmienda al Art. 404 consistió sustancialmente en la exclusión del elemento de intención específica de "consumo propio" del delito tipificado en el Art. 404 y en el encrudecimiento de la pena, incrementándola a una máxima de 5 años con el mínimo de 1 año y multa opcional hasta $5,000.00 para la primera convicción y a un mínimo de dos años y máximo de diez años con multa discrecional hasta $10,000 para las subsiguientes convicciones por el mismo delito. La enmendación del Art. 608 se limitó fundamentalmente a la "disposición transitoria", conservando el propósito leniente establecido en la "disposición transitoria" original para los infractores del Art. 404 según enmendado.[5] Ley Núm. 64 del 31 de mayo de 1972, Leyes de Puerto Rico, 4a. Sesión Ordinaria—6a. Asamblea— pág. 142.

Toda vez que este caso estaba pendiente ante nos en 23 de junio de 1971, fecha en que entró en vigor el Art. 404 (a) de la Ley de Sustancias Controladas, por virtud de la cual se establece una sanción penal para reincidentes de 2 a 6 años de prisión por posesión para consumo propio, y no habiéndose probado por el fiscal que la posesión del apelante era como una gestión incidental al comercio o actividad ilegal de la sustancia controlada, prohibida por el Art. 401, debe favorecerle la mencionada penalidad de 2 a 6 años de prisión.

*Se confirmará el dictamen de culpabilidad del tribunal de instancia y se devolverá el caso para que se resentencie al apelante bajo el Art. 404(a) de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2404(a), conforme lo expuesto en esta opinión.*

---

[5] Véase escolio [1].