EL PUEBLO DE PUERTO RICO, apelado, *v.* RAÚL BIANCHI ÁLVAREZ, acusado y apelante.

*Número:* CR-84-34 *Resuelto:* 24 de junio de 1986

486

*Edwin Ruiz Aponte* y *Carmen Ana Rodríguez Maldonado,* de la Sociedad para Asistencia Legal, abogados del apelante; *Américo Serra, Procurador General Interino, Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

El apelante Raúl Bianchi Álvarez fue acusado por "ilegal, voluntaria y criminalmente, con intención de lastimar las carnes o desfigurar el cuerpo del ser humano Beverly Torres Vázquez, [arrojar] ácido sulfúrico sobre dicha persona". Sometido a juicio, el jurado lo encontró culpable del delito de lanzar ácido, Art. 97 del Código Penal, enmendado por la Ley

Núm. 101 de 4 de junio de 1980 (33 L.P.R.A. sec. 4034) (¹),
y fue condenado a nueve (9) años de presidio a ser cumplidos
bajo el régimen de sentencia suspendida.

Los hechos que dieron lugar a la acusación y convicción del
apelante Bianchi Álvarez ocurrieron en la noche del 6 de sep-
tiembre de 1982. La prueba de cargo estableció que desde que
su hijo fue encarcelado el apelante había estado haciéndole re-
querimientos y proposiciones deshonestas a Beverly Torres
Vázquez, su nuera de dieciséis (16) años. En la noche de autos
al llegar ésta a la casa a eso de las 9:00 P.M. (²), el suegro
reanudó su acecho. Ella lo rechazó y se dirigió a su habita-
ción. En ese momento sintió un líquido quemante en la es-
palda, se volvió y entonces el apelante le echó el líquido en la
cara. Aunque ella logró salir del apartamento, mientras ba-
jaba las escaleras el apelante continuó arrojándole líquido. El
líquido estaba contenido en una botella plástica. La teoría de
la defensa, descartada por el jurado, fue defensa propia.

El apelante le imputa al tribunal sentenciador la comisión
de dos errores: que se admitió evidencia material para probar
el delito sin que se hubiese establecido la cadena de evidencia,
y que no se probó la culpabilidad más allá de toda duda razo-
nable.

I

El primer señalamiento de error se refiere a la admisibili-
dad en evidencia del envase plástico que le ocuparon al ape-

---

(¹)Art. 97 del Código Penal, 33 L.P.R.A. sec. 4034:

"Toda persona que voluntariamente y maliciosamente pusiere o arro-
jare o hiciere poner o arrojar, vitriolo, ácido corrosivo, o cualquier clase de
sustancia cáustica sobre la persona de un semejante, con intención de lasti-
mar las carnes o desfigurar el cuerpo de dicha persona, será sancionada con
pena de reclusión . . . ."

*Sustancia cáustica* se define como sustancia que "quema y desorganiza
los tejidos animales". *Diccionario de la Lengua Española*, 20ma ed., Madrid,
Ed. Espasa-Calpe, 1984, T. I, pág. 295.

(²)A pesar de que su familia vivía en una casa contigua, la joven
continuó viviendo en la del suegro porque así se lo exigía su marido.

lante y de la prueba o análisis hecho por el químico de la Policía sobre el líquido que contenía dicha botella. Alega el apelante que el Ministerio Público no estableció una cadena de evidencia demostrativa de que se tomaron las precauciones suficientes para asegurar la adecuada custodia de la botella plástica desde su ocupación en la residencia del acusado apelante hasta el momento en que su contenido fue sometido a análisis químico y su posterior devolución.

Sobre este particular la prueba de cargo consistió en los testimonios del policía José M. Medina, del agente Reinaldo Juarbe, técnico de fotografía criminal, del químico Pedro A. Vendrell, [3] y de los doctores Jorge Carlo y Ramírez Schon y en la presentación en evidencia de la botella plástica utilizada por el apelante en la comisión de los hechos delictivos.

El policía José M. Medina declaró que en la noche de los hechos investigó una querella sobre una lesionada que había recibido quemaduras. Fue al Centro Médico de Mayagüez y aunque no se pudo entrevistar con la víctima, Beverly Torres Vázquez, se entrevistó con su hermana Wanda Laracuente y con el doctor Jorge Carlo. Este último le informó que la víctima se quejaba de dolor y presentaba quemaduras. Del Centro Médico se trasladó a la residencia del apelante para entrevistarlo. El apelante se resistió un poco a abrir la puerta, pero luego la abrió y al así hacerlo tenía en la mano una botella plástica llena de un líquido. Continuó declarando que como tenía motivos fundados para creer que el envase contenía ácido sulfúrico, le leyó las advertencias, le informó que había una querella en su contra y procedió a arrestarlo. El apelante le entregó la botella plástica. A la botella le adhirió una cinta adhesiva con su número de placa, su nombre y el delito, luego la depositó en el lugar donde se guarda la evidencia en el Cuartel de la Policía, un sitio con cerradura y llave, controlado por un oficial de la Policía. En varias ocasiones la sacó y llevó al

---

[3] Todos estos testigos pertenecían a la Policía de Puerto Rico.

laboratorio de la Policía pero no pudo dejarla por no encontrarse allí el químico para recibirla. En cada una de estas ocasiones la regresó al mismo sitio en el Cuartel de la Policía. No fue hasta el 13 de septiembre de 1982 que pudo entregar la botella plástica al laboratorio de la Policía. El agente Reinaldo Juarbe fue quien la recibió. Al entregársela al agente Juarbe no hizo anotación en la bolsa plástica donde colocaron la botella plástica. En el juicio identificó la botella plástica, pero no pudo encontrar las marcas de identificación que él le había hecho. Indicó que éstas pudieron haberse borrado.

El agente Juarbe por su parte, testificó que es técnico de fotografía criminal, que trabaja en el Laboratorio Criminal de la Policía de Puerto Rico en Aguadilla y que fue la persona a quien el policía Medina le entregó la botella plástica el 13 de septiembre de 1982. Al recibir la botella la marcó, la metió en una bolsa plástica, la guardó en un armario con llave y llenó un formulario. Al otro día se la entregó al químico de la Policía, Pedro A. Vendrell. Indicó también que los únicos que tenían control del lugar donde guardó la botella plástica eran él y el químico Vendrell y que en dicho lugar en ese momento sólo había esa botella. En el juicio el agente Juarbe identificó la botella como la que le entregó el policía Medina, e identificó también la marca que él le había hecho.

El señor Vendrell declaró que es químico, que también trabaja para el Laboratorio Criminal de la Policía de Puerto Rico en Aguadilla y que el agente Juarbe trabaja bajo su supervisión. Identificó la botella plástica como la que le entregó el agente Juarbe, al identificar sus iniciales, además de la marca que le hiciera el agente Juarbe. Continuó testificando que el día que se recibió la evidencia en el laboratorio él estaba en Utuado, por lo que dio instrucciones para que el agente Juarbe recibiera la botella. Corroboró que en el archivo con llave donde se guardó la botella plástica, no había otra en ese momento. Indicó que realizó pruebas científicas e identificó el líquido que contenía la botella como ácido sulfúrico.

Añadió que el ácido pudo haber contribuido a borrar la "etiqueta" de la botella.

El doctor Jorge Carlo declaró que atendió a la víctima en la noche del 6 de septiembre de 1982 cuando ésta llegó a la sala de emergencia del Centro Médico de Mayagüez. Ésta presentaba quemaduras pero, como a él no le correspondía darle tratamiento, la atendió el doctor Ramírez Schon. Éste a su vez testificó que atendió a la víctima Beverly Torres Vázquez, la cual presentaba múltiples quemaduras de tercer grado en la cara, mejilla, pecho y espalda. Le dio tratamiento para quemaduras de ácido sulfúrico, porque le dijo que la habían quemado con ese ácido. Indicó que lo que produjo las quemaduras fue un "agente fuerte".

■ El caso de autos nos brinda la oportunidad de discutir y analizar el concepto de "la cadena de evidencia" cuyo propósito es evitar error en la identificación del objeto y demostrar que la evidencia presentada no ha sufrido cambios sustanciales desde que fue ocupada el día de los hechos. Las Reglas de Evidencia de 1979, Ley Núm. 180 de 20 de julio de 1979 (32 L.P.R.A. Ap. IV), no definen ni regulan específicamente este concepto. Una discusión del mismo requiere el análisis y la interpretación de la interrelación que existe entre las Reglas 9, 18, 19, 75, 80 y 82 de Evidencia. En el caso que tenemos ante nuestra consideración el Ministerio Público presentó y el tribunal admitió en evidencia la botella plástica obtenida del apelante el día de los hechos. El propósito que se perseguía con esta evidencia era dual: probar que fue la misma que utilizó el apelante en la comisión del delito y que ésta contenía, en ese momento, según demostrado por el análisis químico que se le hizo al líquido, una sustancia cáustica, ácido sulfúrico.

■ La botella plástica y el resultado del análisis hecho por el químico Vendrell eran evidencia demostrativa real, por lo que se requería, bajo la Regla 9 de Evidencia, que el tri-

bunal hiciese una determinación de pertinencia preliminar a su admisión en evidencia. Como condición previa a su admisión en evidencia el Ministerio Público tenía que demostrar, con "testimonio de base", la relación entre el objeto, la botella plástica, y el delito; el "voluntariamente y maliciosamente . . . arroj[ar] . . . [una] sustancia cáustica sobre la persona de un semejante, con intención de lastimar las carnes o desfigurar el cuerpo". En relación con la admisión en evidencia del resultado de la prueba científica que se le hizo al líquido que contenía dicha botella plástica, debía demostrar además, la cadena de custodia de la botella plástica con el líquido, desde que ésta fue ocupada en la residencia del apelante en la noche de los hechos, hasta que el químico realizó la prueba o análisis que resultó en la determinación de que el líquido era ácido sulfúrico. Esta evidencia le permitiría al tribunal concluir que el líquido que se analizó y sometió a prueba científica en el laboratorio de la Policía por el químico Vendrell era el mismo que se le ocupó al apelante. La determinación preliminar de admisibilidad la hará el tribunal a base del "testimonio de base" que se le presente, el cual "no queda obligado por las Reglas de Evidencia, excepto en aquellas relativas a privilegios". Regla 9 (A).

■ La pertinencia en relación con el análisis del líquido requería que se demostrara que se tomaron las precauciones necesarias para asegurar la autenticidad, corrección, veracidad y confiabilidad de los resultados obtenidos. *Informe de la Comisión de lo Jurídico del Senado sobre las Reglas de Evidencia Adoptadas por el Tribunal Supremo y Remitidas a la Asamblea Legislativa*, E. L. Chiesa, *Práctica Procesal Puertorriqueña*, San Juan, Pubs. J.T.S., 1985, Evidencia, Vol. I, Caps. 1, 4 y 11; H. M. Brau del Toro, *Nociones sobre la naturaleza y el fundamento del concepto de la cadena de evidencia en casos científico-legales*, 43 Rev. C. Abo. P.R. 403 (1982); 7 *Wigmore, Evidence* Sec. 2129 (Chadbourn rev.

1978); *McCormick, Evidence* Cap. 21, Sec. 212 (3ra ed. 1984); G. C. Lilly, *An Introduction to the Law of Evidence,* Minnesota, West Pub. Co., 1978, Cap. 13, Sec. 109. Esta condición preliminar de pertinencia debe probarse con certeza razonable, con evidencia que produzca "convicción moral en un ánimo no prevenido". Regla 10(C) de Evidencia. No es necesario que se excluya toda posibilidad de error ni que se produzca absoluta certeza. Lo importante es que sea razonable concluir que la evidencia ha sido adecuadamente custodiada y salvaguardada. Regla 10(C) de Evidencia; *Ballou v. Henri Studios, Inc.,* 656 F.2d 1147, 1155 (5to Cir. 1981); *United States v. Albert,* 595 F.2d 283, 290 (5to Cir. 1979), *cert.* denegado, 444 U.S. 963 (1979); *Robinson v. Commonwealth,* 183 S.E.2d 179, 180 (Va. 1971).

El proponente de la evidencia no viene obligado a excluir toda imaginable oportunidad de alterar la identidad o carácter de la prueba. Convencida la sala de instancia que no ha habido anormalidad que afecte la adecuada custodia de la evidencia, es al jurado a quien compete considerarla y evaluarla a la luz de las circunstancias que la rodean. *United States v. Lane,* 591 F.2d 961 (D.C. Cir. 1979). Una vez que el proponente de la evidencia cumple el requisito previo de demostrar que "con razonable probabilidad el objeto no ha sufrido cambio en ningún aspecto importante de su estado original", *United States v. Albert,* supra, pág. 290; *United States v. Alston,* 460 F.2d 48 (5to Cir. 1972), *cert.* denegado, 409 U.S. 871 (1972), cualquier duda que surja respecto a la posible adulteración o contaminación de la evidencia se dirige al peso y no a la admisibilidad de la prueba. *Ballou v. Henri Studios, Inc.,* supra, págs. 1154–1155.

En relación con la pertinencia de la prueba, una vez se presente suficiente evidencia para sostener la identificación o autenticación como condición previa a la admisión, el tribunal procederá a admitirla, salvo que determine, luego de

hacer un adecuado balance entre su valor probatorio y el posible perjuicio, probabilidad de confusión, desorientación o dilación en los procedimientos, que ésta debe ser excluida. (4)

En el caso de autos la botella plástica era un objeto fácilmente identificable, ya que había sido marcada. Bastaba con el testimonio del policía Medina y del agente Juarbe para identificarla adecuadamente. El policía Medina testificó que obtuvo la botella plástica del apelante la noche de los hechos, que la marcó y conservó en un lugar con llave donde usualmente se conserva este tipo de evidencia en el Cuartel de la Policía, hasta que se la entregó al agente Juarbe en el laboratorio de la Policía. El agente Juarbe por su parte declaró que recibió la botella plástica de manos del policía Medina, que estaba marcada por éste, y que entonces él también procedió a marcarla. Identificó las marcas que él había hecho. Esta evidencia era suficiente para producir la "convicción moral en un ánimo no prevenido", R. 10 (C) de Evidencia, de que la botella plástica presentada en evidencia era la misma que utilizó el apelante en la comisión del delito.

■ Ahora bien, en relación con la admisión en evidencia del resultado de la prueba científica era necesario que además se estableciera que el líquido que fue objeto del análisis era el mismo que contenía la botella plástica cuando ésta fue utilizada por el apelante para cometer el delito y que dicho líquido no había sido alterado o contaminado antes de que se le sometiera a análisis químico. Esto requería que se presentara prueba de la adecuada custodia y cuidado de la botella plástica y su contenido desde su ocupación en la noche de los hechos hasta que el líquido fue analizado en el laboratorio de la Policía. P. C. Giannelli, *Chain of Custody and the Handling of Real Evidence*, 20 Am. Crim. L. Rev. 527 (1983); Lilly, *op.*

_____

(4)Regla 19 de las Reglas de Evidencia de 1979 (32 L.P.R.A. Ap. IV, R. 19).

*cit.* Sobre este particular además del policía Medina y el agente Juarbe, atestiguó el químico Vendrell. Éste identificó la botella plástica, por la marca que le había hecho, como la que le entregó el agente Juarbe y como la que contenía el líquido que había analizado, llegando a la conclusión, luego de someterlo a pruebas científicas, de que era ácido sulfúrico. El químico Vendrell también aseveró que el sitio donde se guardó la botella plástica tenía llave, que allí sólo había esa botella y que tenían acceso a este archivo sólo él y el agente Juarbe. La defensa no presentó evidencia tendente a demostrar que de alguna forma se había o pudo haber alterado o contaminado el líquido antes de que se realizaran las pruebas por el químico Vendrell.

Una vez superada la fase preliminar de la pertinencia y admitidos en evidencia tanto la botella plástica como el análisis científico del líquido, el jurado venía obligado a darle el valor y peso probatorio que estimase merecían estas piezas de evidencia. También debería darles peso y valor probatorio a la cadena de evidencia presentada por el Ministerio Público para demostrar que la evidencia que sirvió de base a la prueba científica era confiable por haber sido debidamente custodiada. La cuestión de que si el proponente de la evidencia ha probado una adecuada cadena de custodia, se dirige al peso mejor que a la admisibilidad de la evidencia, y queda por tanto reservada para el jurado. *United States* v. *Henderson,* 588 F.2d 157, 160 (5to Cir. 1979), *cert.* denegado, 440 U.S. 975 (1979); *United States* v. *White,* 569 F.2d 263, 266 (5to Cir. 1978), *cert.* denegado, 439 U.S. 848 (1978). Regla 82 (B) de Evidencia; Giannelli, *op. cit.,* pág. 527; *Ballou* v. *Henri Studios, Inc.,* supra.

El primer error señalado por el apelante no se cometió. La prueba practicada dejó sentado con firmeza que el envase con ácido ocupado al acusado se mantuvo bajo custodia

de la Policía desde su ocupación, hasta completado el análisis del líquido. No hubo interrupción de la llamada "cadena de evidencia" que no es otra cosa que una serie de precauciones para fortalecer la identificación de la evidencia física y la confiabilidad de la prueba obtenida. La mera tardanza de varios días por parte del policía Medina en entregar la botella plástica al laboratorio de la Policía, por sí sola, no constituye la interrupción en la "cadena de evidencia" que desvirtúa la confiabilidad de la prueba y la hace inadmisible. Esta tardanza podría ser un factor que el jurado podría tomar en consideración al aquilatar el peso o valor probatorio del resultado del análisis químico del líquido, para determinar si el mismo es confiable por haber sido adecuadamente custodiada la evidencia que le sirvió de base.

 No toda interrupción en la cadena de custodia causa la exclusión de la prueba. La barrera de admisibilidad queda salvada cuando la apreciación del juez de la evidencia sobre la custodia es que la condición original del objeto no ha sido substancialmente alterada o contaminada. Corresponde al jurado, confrontado con las dudas que suscite la impugnación[5], dar a esta prueba el peso que les merezca. La mera posibilidad de una interrupción de la secuencia no hace la evidencia material inadmisible, sólo plantea una cuestión de peso de la prueba a ser adjudicada por el jurado. *United States* v. *White,* supra.

---

[5] En el caso de autos el acusado-apelante al tratar de establecer su defensa —defensa propia— aceptó haber arrojado sobre la víctima el líquido contenido en una botella plástica, esto unido al testimonio de los doctores Ramírez Schon y Carlo sobre la naturaleza de las quemaduras presentadas por la víctima la noche de los hechos y el hecho de que el acusado era plomero y el líquido fue identificado como el que se vende comercialmente para destapar tuberías, tendía a corroborar el hallazgo del químico Vendrell sobre la naturaleza del líquido, ácido sulfúrico.

## II

El segundo señalamiento de error va dirigido a la apreciación de la prueba. Hemos leído y analizado la exposición narrativa de los testimonios prestados y no encontramos base para sostener este planteamiento. El apelante fue el único que declaró que arrojó el líquido a la víctima en defensa propia. Su testimonio no le mereció crédito al jurado. La prueba relatada en la exposición narrativa sostiene el criterio de culpabilidad del jurado que rechazó la teoría de defensa propia del acusado.

Cuando la prueba es suficiente para condenar, este Tribunal no intervendrá con la apreciación de la misma y la adjudicación de credibilidad en instancia, a no ser que se demuestre error manifiesto o que el juzgador de los hechos fue movido por pasión, prejuicio o parcialidad. *Pueblo* v. *De Jesús Rivera*, 113 D.P.R. 817 (1983); *Pueblo* v. *López Pérez*, 106 D.P.R. 584 (1977); *Pueblo* v. *Ledée Ramírez*, 102 D.P.R. 679, 683 (1974); *Pueblo* v. *Arteaga*, 70 D.P.R. 668, 671 (1949); *Pueblo* v. *Pérez*, 62 D.P.R. 866, 868 (1944); *Pueblo* v. *Suárez*, 51 D.P.R. 903, 915 (1937).

En el caso de autos los testimonios creídos por el jurado y toda la prueba presentada son suficientes en derecho para establecer la culpabilidad del acusado apelante más allá de toda duda razonable.

*Se dictará sentencia en la que se confirmará la aquí apelada.*