# 2003 DTA 93

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I DE SAN JUAN, PANEL IV**

MANUEL ALMEIDA PEREZ
Demandante-Apelado

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO
Demandado-Apelante

-----------------------------------------

POPULAR LEASING UNIVERSAL INSURANCE CO.
Demandante-Apelado

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO
Demandado-Apelante

Núm. KLAN-03-00116

San Juan, Puerto Rico, a 21 de mayo de 2003

Panel integrado por su Presidente, el Juez Gierbolini,
y los Jueces Cordero y Rodríguez Muñiz

Gilberto Gierbolini, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 3 de febrero de 2003, el Procurador General de Puerto Rico presentó Recurso de Apelación en el que nos solicitó la revocación de la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 18 de diciembre de 2002 y notificada el 2 de enero de 2003. Mediante dicha sentencia, el tribunal *a quo* declaró con lugar una demanda de impugnación de confiscación y ordenó la entrega de un vehículo de motor o el valor de tasación del mismo.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** la Sentencia apelada.

### I

Del expediente del caso, surge que el 28 de diciembre de 2000, el agente Diógenes Espinal Báez estaba patrullando en bicicleta por el Centro Comercial El Señorial Plaza y vio un auto Ford Focus de color azul con tintes oscuros que salía del centro comercial. El agente decidió intervenir con dicho vehículo por razón de los tintes y solicitó la licencia de conducir al chofer, Gustavo Almeida Rodríguez, quien no la tenía consigo en ese momento. Mientras el agente conversaba con Almeida, notó un fuerte olor a marihuana, solicitó a todos los pasajeros que desocuparan el auto y observó en el interior del vehículo algo que parecía ser picadura de marihuana. El agente solicitó a Almeida permiso para registrar el auto y éste accedió. El agente solicitó refuerzos por radio y cuando éstos llegaron registraron a todos los pasajeros y el vehículo. El agente Espinal encontró tres bolsas transparentes de color verde con cierre a presión con lo que parecía ser picadura de marihuana. El resultado de la prueba de campo realizada a dicha muestra reflejó positivo a marihuana.

Ese día fue presentada la denuncia por violación al Artículo 404 de la Ley de Sustancias Controladas contra el joven Gustavo Almeida Rodríguez y una orden de confiscación para incautar el vehículo Ford Focus, año 2000, con tablilla EAY-980, conducido por Almeida y registrado a nombre de Popular Leasing. Dicha orden fue notificada el 11 de enero de 2001. En esa misma fecha, el Tribunal de Primera Instancia determinó no causa para arrestar por el delito imputado y el Ministerio Público no fue en alzada.

El 17 de enero de 2001, Manuel Almeida Pérez, padre de Gustavo Almeida Rodríguez, presentó Demanda sobre impugnación de confiscación contra el Estado Libre Asociado de Puerto Rico, en la que alegó que no existía prueba suficiente y preponderante de que el demandante hubiere cometido un delito. El 24 de enero de 2001, Popular Leasing presentó Demanda sobre impugnación de confiscación en la que indicó ser el dueño del auto y adujo que la confiscación era nula e ilegal por no haber cumplido con los requisitos exigidos por la Ley de Confiscaciones. El Estado Libre Asociado de Puerto Rico contestó las demandas el 5 de febrero de 2001 y el 12

de marzo de 2001, respectivamente. El 11 de noviembre de 2001, el Tribunal de Primera Instancia emitió resolución, notificada el 24 de octubre de 2001, mediante la cual ordenó la consolidación de ambos casos.

El 18 de diciembre de 2002, el Tribunal de Primera Instancia emitió Sentencia, notificada el 2 de enero de 2003, en la que determinó que la parte demandada no presentó prueba suficiente para establecer que el vehículo confiscado fue utilizado en la comisión de un delito, ya que no quedó demostrado que la sustancia objeto del análisis químico fuese la misma ocupada; declaró con lugar la demanda; y ordenó la devolución del vehículo o el pago de $10,600.00, el valor según tasación.

Inconforme con dicha determinación, el 3 de febrero de 2003, el Procurador General de Puerto Rico acudió ante nos mediante recurso de apelación en el que nos solicitó la revocación de la Sentencia emitida por el Tribunal de Primera Instancia a quien imputa la comisión de los siguientes tres errores:

*"1. Erró el tribunal apelado al emitir sentencia sin determinaciones de hechos en contra de lo requerido por la Regla 43.2 de Procedimiento Civil.*

*2. Erró el tribunal apelado al resolver que el certificado de análisis de la prueba de campo no es admisible bajo la Regla 65 (H) de Evidencia.*

*3. Erró el tribunal apelado al declarar con lugar la demanda, a pesar que la prueba documental presentada por el Estado estableció preponderantemente la comisión del delito y el nexo entre el delito cometido y el vehículo confiscado."*

## II

En el primer error señalado, los apelantes indican que el Tribunal de Primera Instancia emitió una sentencia sin determinaciones de hechos. No le asiste la razón.

Aunque la Regla 43.2 de Procedimiento Civil, 32 L.P.R.A. Apéndice III, dispone en su parte pertinente que *"en todos los pleitos, el tribunal especificará los hechos probados y separadamente consignará sus conclusiones de derecho y ordenará que se registre la sentencia que corresponda,"* dicha regla también establece que *"no será necesario especificar los hechos probados y consignar separadamente las conclusiones de derecho: (a) al resolver mociones bajo las Reglas 10 ó 36, o al resolver cualquier otra moción, a excepción de lo dispuesto en la Regla 39.2; (b) en casos de rebeldía; (c) cuando las partes así lo estipulen; o (d) cuando por la naturaleza de la causa de acción o el remedio concedido en la sentencia, el tribunal así lo estimare."*

Uno de los fundamentos principales para requerir al tribunal sentenciador que determine hechos específicos es permitir a las partes y al foro apelativo estar completamente informados de las bases de la decisión. Sin determinaciones de hechos a las cuales remitirnos, en caso de basar la revisión de alguna de ellas, la función revisora quedaría un tanto restringida.

Sin embargo, la sentencia emitida en el caso de autos especifica las determinaciones de hechos y las conclusiones de derecho. Si los apelantes deseaban enmendar dichas determinaciones o incluir determinaciones adicionales tenían 10 días para solicitarlo, según lo dispone la Regla 43.3 de Procedimiento Civil, 32 L.P.R.A. Apéndice III. Dicha regla señala que *"no será necesario solicitar que se consignen determinaciones de hechos a los efectos de una apelación, pero a moción de parte, presentada a más tardar diez (10) días después de haberse archivado en autos copia de la notificación de la sentencia, el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes, si es que éstas no se hubieren hecho por ser innecesarias, de acuerdo a la Regla 43.2, o podrá enmendar o hacer determinaciones adicionales, y podrá enmendar la sentencia de conformidad. La moción se podrá acumular con una moción de reconsideración o de nuevo juicio de acuerdo con las Reglas 47 y 48 respectivamente. En todo caso, la suficiencia de la prueba para*

*sostener las determinaciones podrá ser suscitada posteriormente, aunque la parte que formule la cuestión no las haya objetado en el tribunal inferior, o no haya presentado moción para enmendarlas, o no haya solicitado sentencia."*

## III

Como segundo error, el Procurador General de Puerto Rico señala que el Tribunal de Primera Instancia incidió al determinar que el certificado del análisis de la prueba de campo no era admisible.

El inciso (H) de la Regla 65 de Evidencia, 32 L.P.R.A. Apéndice IV, indica que los récords o informes oficiales son admisibles como excepción a la regla de prueba de referencia, aunque el declarante esté disponible como testigo. Según dicha regla, es admisible *"evidencia de un escrito hecho como récord o informe de un acto, condición o evento, cuando se ofrece para probar el acto, condición o evento, si el escrito fue hecho en o cerca del momento del acto, condición o evento, por y dentro del ámbito del deber de un empleado público, siempre que las fuentes de información y el método y momento de preparación fueran tales que indican su confiabilidad."*

Dicha regla debe ser interpretada liberalmente a favor de la admisibilidad y como regla general debe admitirse el informe del químico, Ernesto L. Chiesa, *Tratado de Derecho Probatorio*, Título II, República Dominicana, **Publicaciones J.T.S.**, 1998, páginas 842-844; *Pueblo v. Mattei Torres,* 121 D.P.R. 600, 617-618 (1988). En cuanto a la prueba de campo, la misma también es admisible bajo la Regla 65 (H), siempre y cuando, como en este caso, cumpla con los requisitos. En el caso ante nuestra consideración, el Tribunal de Primera Instancia admitió la certificación del resultado de la prueba de campo a los únicos efectos de demostrar que reflejaba un resultado positivo a la sustancia evaluada y no para probar que era la misma sustancia ocupada, debido a que fue no probada la cadena de custodia.

La cadena de evidencia es una forma de satisfacer el requisito de autenticación que establece la Regla 75 de Evidencia, ██ 32 L.P.R.A. Apéndice IV, mediante el testimonio de testigos con conocimiento personal sobre la custodia o trayectoria de un objeto desde su ocupación hasta su presentación final en el juicio. *Pueblo v. Carrasquillo Morales*, 123 D.P.R. 690, 697 (1989). Su propósito es evitar errores en la identificación de un objeto y demostrar que la evidencia que pretenden presentar no ha sufrido cambios sustanciales desde que fue ocupada el día de los hechos. *Pueblo v. Carrasquillo Morales, supra*, a la página 698; *Pueblo v. Bianchi Alvarez,* 117 D.P.R. 484, 490 (1986). *"Esto es así, ya que debe excluirse toda posibilidad de que la muestra haya sido alterada, confundida con otras, o manejada en forma tal que afecte su integridad y su identidad."* Herminio M. Brau del Toro, *Nociones Sobre la Naturaleza y el Fundamento del Concepto de la Cadena de Evidencia en Casos Científico-Legales*, 43 Rev. C. Abo. P.R., 403, 411 (1982).

La autenticación o identificación del objeto es una condición necesaria para demostrar la pertinencia de la evidencia real demostrativa ofrecida. La pertinencia va a depender de que el juzgador establezca el hecho correspondiente que vincule lo ofrecido con los asuntos correspondientes. Sin embargo, no todo tipo de evidencia real demostrativa requiere establecer su autenticidad mediante una cadena de custodia. Cuando ofrecen en evidencia objetos que son fácilmente identificables, ya sea porque tienen un número o una marca particular, no es imprescindible establecer la cadena de custodia para su admisión en evidencia. Así ocurre con cualquier objeto que tenga un número de serie, como un arma o un billete; o con un objeto inscrito con las iniciales o marcas de un policía u otra persona; o con una obra de arte con características propias. El proponente de este tipo de evidencia puede demostrar la autenticidad y pertinencia de la misma sin tener que demostrar la custodia o trayectoria exacta y precisa de dicha evidencia, *Pueblo v. Carrasquillo Morales, supra*, a las páginas 699-700.

Sin embargo, en el caso de evidencia que no es susceptible de identificar o marcar, el proponente de la evidencia vendrá obligado, como regla general, a probar la cadena de custodia para lograr la admisibilidad de la misma. Por ejemplo: (1) ocupan objetos que contienen evidencia de naturaleza fungible, como líquidos, polvos, píldoras, etc., cuyo contenido está en controversia y resulta imposible de marcar o identificar; (2) aunque no es

fungible, la evidencia ocupada no tiene características únicas que la distinga de objetos similares y resulta igualmente imposible de marcar, o aunque pudo ser marcada, no lo fue; y (3) la condición del objeto es lo relevante, como películas, grabaciones, etc., y el mismo es susceptible de alteración. En estas situaciones es necesario algo más que una simple identificación en corte para establecer la autenticidad y pertinencia del objeto y lograr su admisión en evidencia; ese objetivo se alcanza probando la cadena de custodia, *Pueblo v. Carrasquillo Morales*, *supra*, a las páginas 700-702.

El caso que nos ocupa es uno demostrativo de una de las situaciones antes mencionadas, ya que la evidencia ocupada contiene materia fungible, marihuana, que fue objeto de análisis y cuyo resultado fue presentado en evidencia. Debido a la pertinencia que tiene el hecho de que la sustancia analizada haya sido la misma que fue incautada, no es suficiente una mera identificación, ya sea por medio de marcas o iniciales hechas en la envoltura que la contenía por el policía que la ocupó, ya que esto sólo establecería el hecho de que el objeto presentado en corte fue incautado por el policía y no que su contenido era el mismo. El Estado tenía que establecer que la sustancia ocupada era la misma sustancia analizada y que no había sido cambiada, alterada ni contaminada. Para ello, tenía que presentar prueba de la custodia adecuada de la evidencia desde el momento de su ocupación hasta el momento de su análisis. Así ha resuelto nuestro Tribunal Supremo, véase, *Pueblo v. Carrasquillo Morales*, *supra*, a las páginas 702-703 y *Pueblo v. Bianchi Alvarez, supra*, a las páginas 493-494.

No es correcto, según alegan los apelantes, que la certificación del análisis es prueba suficiente de la cadena de evidencia. Dicha conclusión sería contraria al requisito de autenticidad requerido por la Regla 75 de Evidencia, *supra*. El Procurador General de Puerto Rico parece sostener su posición en el hecho de que el certificado del análisis de la prueba de campo contiene información sobre a quién le fue ocupada la evidencia, el día en que fue obtenida, el número de identificación del sobre que la contenía y el nombre de la persona que realizó la prueba. Sin embargo, nada menciona sobre la cadena de evidencia.

Por lo que concluimos que el foro de instancia no erró al resolver que el Estado no presentó prueba suficiente para autenticar el informe de análisis químico.

## IV

La Asamblea Legislativa de Puerto Rico aprobó la Ley Número 55 de 16 de agosto de 1989, según enmendada, mejor conocida como Ley Uniforme de Confiscaciones de 1988, 34 L.P.R.A. Sección 1723 *et seq.*, con el propósito de actualizar la legislación que había estado en vigor desde 1960 y ampliar el marco de autoridad del Estado para confiscar *"toda propiedad que sea utilizada en relación a, o sea el resultado o producto de la comisión de delitos graves y de aquellos delitos menos graves en que por ley se autorice la confiscación, cuando tales delitos graves y menos graves estén tipificados en el Código Penal del Estado Libre Asociado de Puerto Rico, en las leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, en las leyes de juegos prohibidos, bebidas alcohólicas, leyes fiscales, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito y de embarcaciones, así como en otras leyes y aquella propiedad que esté sujeta a una sentencia de confiscación que así lo autorice,"* Artículo 2, 34 L.P.R.A. Sección 1723; *Alejandro Rivera v. E.L.A.*, 140 D.P.R. 538, 542 (1996); *Del Toro Lugo v. E.L.A.*, 136 D.P.R. 973, 981 (1994).

En nuestro ordenamiento jurídico está establecido que el procedimiento de confiscación es de carácter civil o *in rem*; es decir, va dirigido contra la cosa misma y no contra el dueño de la propiedad, su poseedor, encargado o cualquier otra persona con algún interés legal sobre la misma, *General Accident Ins. Co. v. E.L.A.*, 137 D.P.R. 466, 471 (1994); *Del Toro Lugo v. E.L.A., supra*, a la página 987. Sin embargo, la ley requiere notificar de la confiscación a quien conste inscrito como dueño en el Registro de Vehículos del Departamento de Transportación y Obras Públicas y al acreedor condicional que haya presentado su contrato para inscribir el gravamen sobre el vehículo, Artículo 3, 34 L.P.R.A. Sección 1723 (a) (2) (b). El propósito de dicho requisito es salvaguardar los derechos constitucionales de aquella parte que tenga algún interés en la propiedad confiscada y brindarle la oportunidad de ser oído, *General Accident Ins. Co. v. E.L.A., supra*, a la página 475. Además, permite a las

personas notificadas impugnar la confiscación presentando una demanda contra el Estado Libre Asociado. Artículo 8, 34 L.P.R.A. Sección 1723 (f). Tanto el acreedor condicional como el dueño, pueden demandar para impugnar la confiscación que llevó a cabo el Estado. El demandante también puede, en protección de su interés sobre la propiedad confiscada, prestar una fianza por el importe de la tasación de la propiedad como garantía a favor del Estado. Una vez el tribunal apruebe la fianza, ordenará que la propiedad confiscada sea entregada a su dueño y la fianza pasará a sustituir la propiedad ocupada. En aquellos casos en que el tribunal decrete la ilegalidad de una confiscación, la Junta de Confiscaciones devolverá la propiedad ocupada al demandante o en caso de que haya dispuesto de la misma, el E.L.A. pagará el importe de la tasación de la propiedad al momento de la ocupación o la cantidad de dinero por la cual haya sido vendida, lo que resulte mayor, además del pago de intereses desde la fecha de ocupación, Artículo 13, 34 L.P.R.A. Sección 1723 (k-1).

Según surge de los documentos que obran en el expediente, la confiscación en el caso de autos estuvo motivada por la intervención efectuada por el agente Espinal. El Tribunal de Primera Instancia emitió sentencia a favor de los demandantes bajo la teoría de que no procedía la confiscación porque contra el conductor, poseedor del vehículo, no hubo determinación de causa probable para arrestar por el delito de violación al Artículo 404 de la Ley de Sustancias Controladas, 24 L.P.R.A. Sección 2404.

La confiscación es un procedimiento de carácter *in rem* y está basada en la ficción jurídica de que la cosa misma es la ofensora primaria. El derecho del Estado de tomar posesión de la cosa surge de su utilización en la comisión de un delito. En el 2000, la Asamblea Legislativa aprobó la Ley Número 32 de 14 de enero y enmendó el Artículo 2 de la Ley Uniforme de Confiscaciones de 1988, 34 L.P.R.A. Sección 1723, para añadir un inciso (c) a los fines de disponer que *"el resultado favorable al acusado o imputado en cualquiera de las etapas de la acción criminal no será impedimento para, ni tendrá efecto de cosa juzgada sobre, la acción civil de confiscación, aunque ésta se base en los hechos imputados en la acción penal."* No obstante, el 1 de enero de 2003, fue aprobada la Ley Número 18 que eliminó dicho inciso. Por lo que podemos resumir que lo determinante en un procedimiento de confiscación es que el Estado pueda demostrar si alguna actividad delictiva ha sido cometida en el vehículo o mediante el uso del vehículo, aunque la misma no haya sido cometida por el poseedor o conductor del mismo.

Así, pues, si el dueño, poseedor o encargado del vehículo, o la persona con interés legal sobre éste, ha puesto, de forma consciente y voluntaria, dicho vehículo en posesión del infractor o de la persona bajo la cual éste actúa, los derechos de aquéllos corren la suerte del uso a que el infractor pueda someter el vehículo, *General Accident Insurance Co. v. E.L.A., supra,* a la página 471; *Del Toro Lugo v. E.L.A., supra,* a la página 987. El hecho de que el dueño del automóvil confiscado no resulte culpable de los cargos criminales que dieron lugar a la confiscación, no significa, necesariamente, que sea un tercero inocente para los fines de la Ley Uniforme de Confiscaciones.

Tanto el estado de derecho vigente a la fecha de los hechos del caso de autos, como después de la enmienda efectuada a la Ley Uniforme de Confiscaciones, *supra,* establece que la confiscación constituye una acción independiente de la acción penal que pudiese resultar de los mismos hechos delictivos en que estuvo basada la misma y puede ser llevado a cabo y culminarse antes de acusar, declarar culpable o absolver al acusado, o aun cuando no hayan presentado ningún cargo criminal, *Del Toro Lugo v. E.L.A., supra,* a la página 983. El procedimiento de confiscación no va dirigido como los estatutos penales, contra el autor o autores del delito, sino contra el objeto utilizado en la comisión del delito. Su propósito no es únicamente castigar al dueño o a la persona que cometió el delito, sino que también tiene el propósito de prevenir que la propiedad pueda ser utilizada nuevamente para cometer otras fechorías. Además de su objetivo punitivo, tiene un propósito social de carácter preventivo. Es frenar el auge en las actividades delictivas que desgraciadamente ocurren en Puerto Rico, *General Accidente Ins. Co. v. E.L.A., supra,* a la página 472. Por tanto, los elementos pertinentes para la procedencia de la confiscación son la existencia de prueba suficiente y preponderante de que hayan cometido el delito y un nexo entre la comisión del delito y la propiedad confiscada, *Del Toro Lugo v. E.L.A., supra,* a la

página 983. Sin embargo, en el caso de marras no encontramos que la prueba presentada por el Estado haya demostrado dichos requisitos.

Una doctrina reiterada por el Tribunal Supremo es el conceder deferencia a la determinación que hace el juzgador de los hechos a nivel de instancia, y de ordinario, no intervenir con la misma en ausencia de pasión, prejuicio, parcialidad, error manifiesto o que la apreciación de la evidencia sea contraria a la realidad factual, o que la prueba resulte ser inherentemente imposible o increíble. *Monllor v. Soc. de Gananciales*, 138 D.P.R. 600, 610 (1995); *Pueblo v. Maisonave Rodríguez,* 129 D.P.R. 49, 62-63 (1991); *Pueblo v. Rivero, Lugo y Almodóvar*, 121 D.P.R. 454, 472-473 (1988).

El Tribunal Supremo ha reconocido que los tribunales de menor jerarquía están en mejor posición que los tribunales apelativos para evaluar la prueba presentada, toda vez que han tenido contacto directo con la prueba y han podido evaluar sus elementos visibles e intangibles. Después de todo, son los que tienen la oportunidad de ver y escuchar las declaraciones de los testigos y de examinar su comportamiento en la silla testifical, mientras que nosotros sólo tenemos récords mudos e inexpresivos, *Pueblo v. Maisonave Rodríguez, supra*, a las páginas 62-63; *Pueblo v. Rivero, Lugo y Almodóvar, supra*, a las páginas 472-473; *Pérez Cruz v. Hosp. La Concepción,* 115 D.P.R. 721, 728 (1984).

No obstante, ello no significa que el foro apelado esté inmune al error, o sea, infalible. El arbitrio del juzgador de hechos no es absoluto. *"Una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal." Ramos Acosta v. Caparra Dairy, Inc.,* 113 D.P.R. 357, 365 (1982) citando a *Vda. de Morales v. De Jesús Toro,* 107 D.P.R. 826, 829 (1978). En nuestra función revisora debemos *"velar porque se haga justicia a aquella parte que de acuerdo con nuestro más sano criterio, tiene derecho a ella." López Vicil v. ITT Intermedia, Inc.,* 142 D.P.R. 857, 867 (1997). Así, pues, podemos dejar sin efecto las determinaciones de hechos realizadas por el foro de instancia, siempre que del examen de la totalidad de la evidencia quede definitiva y firmemente demostrado que un error fue cometido. *Pueblo v. Hernández Castro*, 90 D.P.R. 329, 336 (1964).

En el caso de autos, el Tribunal de Primera Instancia aquilató la prueba documental y testifical presentada y confirió la credibilidad y la confiabilidad que le mereció. No surge del récord ningún indicio de que el tribunal haya actuado de forma parcializada o prejuiciada y estamos de acuerdo con la decisión del foro *a quo* en cuanto a que la prueba presentada no fue suficiente para demostrar que el vehículo confiscado fue utilizado en la comisión de un delito. Por lo que el tercer error señalado no fue cometido.

## V

Por los fundamentos anteriormente expuestos, **CONFIRMAMOS** la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIO 2003 DTA 93

**1.** Esta regla establece que *"el requisito de autenticación o identificación como una condición previa a la admisibilidad se satisface con la presentación de evidencia suficiente para sostener una determinación de que la materia en cuestión es lo que el proponente sostiene."*