EL PUEBLO DE PUERTO RICO, apelado, *v.* RAMÓN JIMÉNEZ HERNÁNDEZ, acusado y apelante.

*Número:* CR-84-35 *Resuelto:* 6 de noviembre de 1985

---

(¹⁶)*Rivera de Vincenti* v. *E.L.A.*, supra, pág. 70.

*María de Lourdes Guzmán* y *Margarita Carrillo,* abogadas del apelante; *Héctor Rivera Cruz, Secretario de Justicia* y *Doris Zoé Pons Pagán, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Convicto y sentenciado que fuera el apelante Ramón Jiménez Hernández en el Tribunal Superior de Puerto Rico, Sala de San Juan, por los delitos de robo y asesinato en primer grado, en apelación le imputa al referido tribunal la supuesta comisión de dos (2) errores a saber:

### PRIMER ERROR

Se vulneraron los derechos al debido proceso de ley y a un juicio justo e imparcial al denegar el Honorable Tribunal de instancia dos recusaciones motivadas solicitadas por la defensa a dos candidatos a servir como miembros del jurado quienes durante la desinsaculación manifestaron que para poder emitir su voto tomarían en consideración el hecho que el acusado no declarase en el proceso.

### SEGUNDO ERROR

Cometieron grave error los señores del jurado al declarar culpable al acusado ya que existía duda razonable sobre su participación en los alegados hechos delictivos y la prueba de cargo no rebatió la presunción de inocencia. Alegato del Apelante, pág. I.

### I

El primer señalamiento de error se refiere a unas contestaciones ofrecidas durante el proceso de desinsaculación del jurado por dos (2) candidatas al mismo, quienes a preguntas de la defensa hicieron manifestaciones demostrativas de que en ese momento no tenían una noción correcta del estado

de derecho imperante en nuestra jurisdicción referente a la presunción de inocencia que cobija a todo imputado de delito y al derecho de éste contra la autoincriminación; en específico, el no estar obligado a declarar en su propia defensa y no tener que presentar prueba alguna durante el proceso. [1] Alega la representación legal del apelante que dichas manifestaciones son indicativas de "prejuicio en contra del acusado" por parte de los candidatos, razón por la cual erró el tribunal de instancia al declarar sin lugar las solicitudes de "recusación motivada" que hiciera la defensa. [2]

■ No hay duda de que el procedimiento de desinsaculación del jurado es una de las etapas más críticas e importantes de un juicio criminal por cuanto el mismo es uno de los mecanismos mediante los cuales se pretende garantizar que el jurado que intervendrá en el proceso como juzgador supremo de los hechos será uno imparcial, capacitado y libre de prejuicios. *Duncan* v. *Louisiana*, 391 U.S. 145, 151 (1968) ; *Connors* v. *United States*, 158 U.S. 408 (1895).

■ Esa es la razón de ser de la Regla 119 de Procedimiento Criminal, la cual autoriza tanto al magistrado que preside el proceso, de manera principal, como posteriormente, y en forma secundaria, a los abogados de las partes para que

---

[1] Una de las candidatas a jurado, al ser preguntada si tomaría en consideración para emitir un veredicto el hecho de que el acusado no declarara durante el proceso a celebrarse, contestó que "ella tomaría en consideración para emitir su voto el que el acusado guardara silencio durante el proceso" y que "prefería escuchar el testimonio del acusado para poder decidir".

La segunda dama, al ser cuestionada sobre si ella consideraba que era perjudicial para el acusado el hecho de que éste guardara silencio durante el juicio, expresó que "ella esperaba que el acusado tuviera 'el valor para decir porqué lo hizo' ". Véase E.N.P., pág. 7.

[2] Como veremos más adelante, el tribunal de instancia denegó las referidas solicitudes luego de instruir a las candidatas a jurado sobre el derecho vigente y de cerciorarse que éstas estaban en disposición de acatar el mismo.

le formulen a los candidatos potenciales a jurados las "preguntas pertinentes a su capacidad para actuar".

Ahora bien, la función de instruir a los señores del jurado sobre el derecho a ser aplicado al caso corresponde y es función fundamental y exclusiva del magistrado que preside el proceso y no del abogado defensor o del fiscal. D. W. C. Blashfield, *A Treatise on Instructions to Juries in Civil and Criminal Cases*, St. Paul, Minn., Keefe-Davidson Co., 1902, T. 1, pág. 5; *United States* v. *Delay*, 500 F.2d 1360, 1366 (8vo Cir. 1974).

Ya en *Pueblo* v. *Montañez*, 54 D.P.R. 852 (1939) habíamos resuelto que no abusa de su discreción un tribunal que deniega una recusación motivada, basada meramente en la expresión de un candidato a jurado, demostrativa la misma de que el candidato en ese momento desconocía un principio legal. También resolvimos allí que tampoco abusa de su discreción el tribunal que impide que los abogados involucren a los candidatos a jurado en una discusión extensa sobre cuestiones de derecho. Debemos recordar que por lo general los candidatos a jurados, no obstante su buena fe e intención de cooperar con la administración de la justicia, son personas legas que no tienen noción alguna de los principios legales vigentes en nuestra jurisdicción.

Permitir que durante el proceso de desinsaculación del jurado tanto el fiscal como el abogado defensor sometan a los candidatos potenciales a jurado a un "examen" o "reválida" sobre los referidos principios legales provoca el que ocurran incidentes como los del presente caso, los cuales no sólo causan interrupciones y dilaciones innecesarias durante el proceso sino que son fuente de confusión y desasosiego para las personas que gentilmente consienten a cumplir con su deber ciudadano de servir como jurados.(³) *People* v. *Edwards*, 163

---

(³) La ocurrencia de estas dilaciones e interrupciones fue lo que el legislador precisamente quiso evitar mediante la Ley Núm. 89 de 26 de junio de

Cal. 752, 753, 127 P. 58 (1912); B. J. George, *Criminal Procedure Sourcebook*, New York City, Practising Law Institute, 1976, Vol. II, págs. 894–895.

 Somos del criterio que, como parte del poder inherente que tienen los tribunales de reglamentar los procedimientos ante su consideración, *Meléndez* v. *Levitt & Sons of P.R.*, 104 D.P.R. 797, 807 (1976) y la amplia discreción que tienen para ello, *United States* v. *Bear Runner*, 502 F.2d 908, 911–912 (8vo Cir. 1974); *United States* v. *Butera*, 677 F.2d 1376, 1383 (11mo Cir. 1982), y con el propósito de lograr que el proceso de selección del jurado sea uno más eficiente y justo, los tribunales de instancia deberán —una vez los candidatos a jurado han sido preliminarmente juramentados— instruir en forma sucinta, general y colectiva(4) a los candidatos sobre los principios básicos pertinentes de derecho vigentes en nuestra jurisdicción(5) e indagar sobre la disposición de los mismos a acatar y aplicar dichos principios. *United States* v. *Vera*, 701 F.2d 1349, 1354–1356 (11mo Cir. 1983); *United States* v. *Cunningham*, 523 F.2d 218 (8vo Cir. 1975); Anot., 73 A.L.R.2d 1187, 1190. Sujeto al ejercicio de su sana discreción, los foros de instancia deberán evitar la formulación de preguntas repetitivas e innecesarias sobre los referidos principios a los candidatos a jurado. Los abogados de las partes, naturalmente, podrán siempre inquirir de éstos sobre cual-

---

1974 que enmendó la citada Regla 119 de Procedimiento Criminal a los fines de establecer que el *rol* principal en el proceso de desinsaculación del jurado le corresponde al magistrado que preside el juicio. Véase la Exposición de Motivos de la referida ley.

(4) Individualmente, cuando ello resulte necesario.

(5) Tales como: presunción de inocencia; obligación del ministerio público de probar la culpabilidad del acusado más allá de duda razonable; derecho del acusado a declarar o no declarar en su propia defensa y de que si elige no hacerlo, ese hecho no puede ser tomado en consideración; etc. Instrucciones preliminares que serán complementadas por las instrucciones generales finales que le serán transmitidas a los señores del jurado antes de que éstos se retiren a deliberar.

638

quier otra materia pertinente a su capacidad para actuar como jurados en una forma imparcial y libre de prejuicios.

Un examen de los hechos específicos del presente caso revela que, no obstante no haberse seguido la norma que hoy establecemos, (6) el error señalado no fue cometido. La exposición narrativa de la prueba certificada como correcta por el tribunal de instancia demuestra que el magistrado que presidió el proceso —inmediatamente después de la ocurrencia de las manifestaciones impugnadas— instruyó correcta y adecuadamente a las candidatas en controversia y que éstas, luego de así ser instruidas, manifestaron que habían entendido las instrucciones impartidas y que estaban en completa disposición de obedecer las mismas. Ello es todo lo que se requiere. *Pueblo* v. *Montañez*, ante; *United States* v. *Cunningham*, ante; *Grandsinger* v. *United States*, 332 F.2d 80 (10mo Cir. 1964). Actuó correctamente, en su consecuencia, el tribunal de instancia al denegar las recusaciones solicitadas.

■ Por último, resulta pertinente señalar que según surge de la "minuta" que recoge los procedimientos acaecidos en el presente caso correspondiente al día 18 de abril de 1984 —día en que el tribunal de instancia impartió a los señores del jurado las instrucciones generales finales— la defensa manifestó, luego de que el jurado se retirara a deliberar, no tener objeción alguna a las mismas. Como es sabido, dichas instrucciones generales cubren las materias aquí en controversia. No habiendo sido objetadas por la defensa, debemos presumir la corrección jurídica de las mismas. *Pueblo* v. *Ortiz Martínez*, 116 D.P.R. 139 (1985); *Pueblo* v. *Rivera Carmona*, 108 D.P.R. 866, 872 (1979). Ello resulta en una garantía adicional de que todos los señores del jurado que intervinieron en el proceso de deliberación en el presente caso emitieron sus

(6) Algunos jueces de instancia, actuando por su propia iniciativa, han estado observando la misma.

votos con una correcta percepción y entendimiento del derecho aplicable al mismo.

## II

El segundo señalamiento de error es completamente inmeritorio. Se alega que la prueba de cargo "no demostró en modo alguno que el apelante participara voluntariamente en los hechos", en otras palabras, se argumenta que la acción del coautor León Paul Rivera al ultimar a balazos al occiso José Izquierdo Llerena fue una de su propia iniciativa por la cual no debe responder el apelante.

La prueba presentada por el Ministerio Fiscal durante el proceso celebrado en el presente caso —y creída por los señores del jurado que intervinieron en el mismo— consistió principalmente del testimonio de un cómplice del aquí apelante, de nombre Jorge Morales Cruz, quien declaró bajo el manto de inmunidad. La misma demostró, en síntesis, que el día de los hechos —26 de abril de 1983— el apelante Ramón Jiménez Hernández se encontró en horas de la mañana con Morales Cruz y un individuo de nombre León Paul Rivera en el parque de pelota del Residencial Las Margaritas, Santurce, Puerto Rico; decidiendo los referidos individuos "ir a San Juan" con el propósito de asaltar a alguien con un revólver que tenía el apelante, para lo cual abordaron una guagua de la Autoridad Metropolitana de Autobuses. Dichos individuos se desmontaron de la misma en la parada del "área del Escambrón", encontrándose allí con el occiso José Izquierdo Llerena, quien era un homosexual amigo del testigo de cargo Morales Cruz. Estando conversando con éste cerca del vehículo de motor de su propiedad, se acercó a ellos un agente de la Policía de Puerto Rico quien intervino brevemente con ellos —anotando el agente el nombre de Izquierdo Llerena— por haberles parecido "personas sospechosas", luego de lo cual se retiró del lugar. El occiso, al ser así requerido, le brindó transportación en su automóvil a los tres sujetos. En el trayecto se le in-

formó que se trataba de un asalto. El apelante cogió el volante del carro; surgió un forcejeo. El sujeto León Paul Rivera tomó el revólver de manos del apelante y ultimó a Izquierdo Llerena con el mismo. Luego de abandonar el automóvil y el cadáver, los tres individuos se repartieron por partes iguales la suma de $75 en efectivo que llevaba el occiso. La declaración del testigo Morales Cruz fue "confirmada" por el policía Willy Rodríguez quien identificó en corte abierta al apelante y al referido testigo como dos de las tres personas que acompañaban al occiso Izquierdo Llerena al momento de la intervención que realizara el 26 de abril de 1983 en el "área del Escambrón".

■ Como hemos visto, se trata de una muerte acaecida durante la perpetración de un delito de robo. La acusación que por el delito de asesinato en primer grado radicara el Ministerio Público al amparo de las disposiciones del Art. 83 del Código Penal de Puerto Rico de 1974([7]) así lo imputó. Aun aceptando para fines de la argumentación —lo cual es cuestionable— que el acto de dispararle al occiso no había sido contemplado por el apelante, ([8]) él es responsable de la muerte ocurrida durante el delito de robo que había acordado perpetrar en unión a los otros dos coautores. Véanse *Pueblo* v. *Lucret Quiñones,* 111 D.P.R. 716 (1981); *Pueblo* v. *González Ruiz,* 90 D.P.R. 580 (1964).

Por los fundamentos expuestos, *procede la confirmación de las sentencias apeladas. Se dictará sentencia de conformidad.*

---

([7]) 33 L.P.R.A. sec. 4002.

([8]) Sobre todo cuando consideramos que el arma de fuego utilizada era de la propiedad del apelante.