EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ex Parte:<br><br>Noticentro de Puerto Rico;<br>Televicentro of Puerto Rico,<br>LLC | 2018 TSPR 176<br><br>201 DPR ____ |

Número del Caso: MC-2018-523

Fecha: 18 de octubre de 2018

Abogado de la parte Peticionaria:

      Lcdo. Manuel R. Purcell-Mattei

Materia: Resolución del Tribunal con Voto particular de Conformidad.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ex Parte:<br><br>Noticentro de Puerto Rico;<br>Televicentro of Puerto Rico,<br>LLC | MC-2018-523 |

RESOLUCIÓN

San Juan, Puerto Rico, a 18 de octubre de 2018.

Examinada la *Moción solicitando utilización de equipo audiovisual para la cobertura electrónica de procesos judiciales*, se provee no ha lugar.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo emite un Voto Particular de Conformidad al cual se une el Juez Asociado señor Martínez Torres. La Jueza Presidenta Oronoz Rodríguez concedería a las partes cinco días para que expresen sus posturas. El Juez Asociado señor Estrella Martínez proveería ha lugar. La Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Colón Pérez no intervinieron.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex Parte:

|  |  |  |
|---|---|---|
| Noticentro de Puerto Rico; Televicentro of Puerto Rico, LLC | MC-2018-523 |  |

Voto Particular de Conformidad emitido por el Juez Asociado señor Kolthoff Caraballo al cual se une el Juez Asociado señor Martínez Torres

San Juan, Puerto Rico, a 18 de octubre de 2018.

Televicentro of Puerto Rico, LLC (Televicentro) nos solicita la autorización de la entrada de equipo audiovisual para la transmisión en vivo por televisión e internet de la vista sobre desinsaculación del Jurado en el caso de ELA v. Héctor O´Neill, DLE2018E0102, pautada para el 26 de noviembre de 2018. Asimismo, interesa grabar los procedimientos para su posterior difusión.

La solicitud que Televicentro nos presenta es oportuna para explicar una de las excepciones por las cuales me apartaría de la norma general a la apertura de las salas de los tribunales.

Desde las etapas iniciales del *Programa Experimental para el uso de Cámaras Fotográficas y Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales* (PECAM), me he convertido en un ferviente

defensor a favor de que los procedimientos judiciales permanezcan abiertos, pues considero que es un avance que representa y se dirige "hacia un sistema de justicia más transparente".[1] A su vez, los medios televisivos y la comunidad jurídica en general conocen que, en lo concerniente a la difusión de los procedimientos judiciales, mi visión ha sido clara y mi posición se reitera firme.[2] Ello pues, con salvadas excepciones, he creído en la transmisión de cualquier proceso judicial e incluso en cualquier etapa.

Tal como expresé en ASPRO et al., Ex Parte I, 189 DPR 769, 782 (2013), "el aspecto más crítico de esta odisea es lo concerniente a los procesos en las salas criminales. Los derechos de los acusados a un juicio justo e imparcial como parte del debido proceso de ley constitucional, y la seguridad de los testigos, jurados y demás protagonistas del procedimiento judicial criminal, son aspectos de la más alta importancia y preocupación". Ahora bien, en consideración a lo antes señalado, cuando un medio de comunicación televisivo solicita la autorización para transmitir un procedimiento de la sala de lo criminal, es importante evaluar la etapa en particular del caso que éstos pretenden difundir. Así, si bien hemos autorizado la transmisión y grabación de distintas etapas en los casos criminales, en esta oportunidad me veo en la obligación de explicar mi postura cuando un medio

---

[1] ASPRO et al., Ex Parte I, 189 DPR 769, 776 (2013).

[2] Íd., pág. 782.

televisivo pretende difundir una vista sobre el procedimiento de la desinsaculación del Jurado.

La Regla 4(j)(ii) del Reglamento del Programa Experimental para el uso de Cámaras Fotográficas y Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales (Reglamento),[3] establece que, en materia criminal, el procedimiento judicial comprende únicamente la celebración de juicios por tribunal de derecho, lecturas de fallo y vistas de lectura de sentencia. Es decir, el Reglamento del PECAM no contempla la autorización de la entrada de los medios de comunicación televisivos si el procedimiento penal se celebra mediante juicio por Jurado. Sobre este particular, es menester aclarar que no descarto la posibilidad de extender la apertura a la Prensa a un juicio que se ventile por Jurado, si se cumple con ciertas condiciones; esto es, siempre y cuando no se enfoque o se apunte en forma alguna a los miembros del Jurado ya constituido, ni algún jurado en particular. Nótese que este curso de acción sería en aquellos casos cuyo panel del Jurado esté debidamente seleccionado.

Ahora bien, hemos expresado que "el procedimiento de desinsaculación del jurado es una de las etapas más críticas e importantes de un juicio criminal por cuanto el mismo es uno de los mecanismos mediante los cuales se pretende garantizar que el jurado que intervendrá en el proceso como juzgador supremo de los hechos será uno

---

[3] In re Enmdas. Regl. Uso Cámaras Proc. Jud., 193 DPR 475 (2015).

imparcial, capacitado y libre de prejuicios".[4] Durante el procedimiento de desinsaculación del Jurado se "le permite a las partes y al juez indagar con preguntas a los potenciales miembros del jurado, para así evitar la selección de un candidato a jurado que pueda tener su juicio obnubilado o denote visos de parcialidad".[5] Vemos pues que, conforme a la Regla 119 de Procedimiento Criminal, 34 LPRA Ap. II, las personas sujetas a este proceso necesariamente interactúan de manera activa con las partes y con el juez que preside la sala en la medida que tengan que contestar las preguntas que éstos les formulen en lo pertinente a su capacidad para actuar como jurado. Es la exposición ante las cámaras de dicha interacción lo que me preocupa.

Por otro lado, la prohibición de la transmisión de una vista sobre de selección del Jurado no es nueva. Estudios empíricos e informes realizados por esta rama de gobierno han reflejado que en la mayoría de los estados de la Nación americana se prohíbe la transmisión del procedimiento de desinsaculación del Jurado.[6]

Entiendo que autorizar la difusión en esta etapa expondría innecesariamente a potenciales jurados que,

---

[4] Pueblo v. Hernández Mercado, 126 DPR 427, 435, citando a Pueblo v. Jiménez Hernández, 116 DPR 632, 635 (1985).

[5] Pueblo v. Rivera Santiago, 176 DPR 559, 586 (2009).

[6] Véanse Secretariado de la Conferencia Judicial y Notarial: Informe sobre el Uso de Cámara Fotográficas y Equipo Audiovisual de Difusión para cubrir los Procedimientos Judiciales en Puerto Rico, Tribunal Supremo de Puerto Rico, 2011, págs. 13-14. Secretariado de la Conferencia Judicial y Notarial: Informe Evaluación Sobre la Efectividad del Uso De Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales, Tribunal Supremo de Puerto Rico, 2014.

durante el procedimiento, interactúan de manera activa, y cuya participación, además, es preliminar, pues se desconoce si finalmente serán parte del Jurado seleccionado. Es que no puede ser de otro modo, pues si bien entendemos los beneficios de permitirle a los medios la entrada para la transmisión de los procedimientos judiciales, también tenemos el deber ineludible de no exponer a los potenciales jurados durante la vista de desinsaculación del Jurado. Es decir, por la naturaleza del proceso de selección del Jurado, no estoy de acuerdo con la exposición de la imagen y la voz de personas que, obligatoria y aleatoriamente, descargan su responsabilidad ciudadana al obedecer a nuestro llamado de comparecer al foro de instancia para ser examinadas por las partes y el magistrado que presida la vista de desinsaculación del Jurado.

Por tanto, y a modo de excepción, no avalo la entrada de equipo audiovisual alguno para la transmisión en vivo por televisión e internet del proceso de desinsaculación del Jurado, así como tampoco la grabación del mismo para una posterior difusión.

Erick V. Kolthoff Caraballo
Juez Asociado