Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>STEVEN A. RODRÍGUEZ MATÍAS<br><br>Apelante | KLAN202101071 | Apelación procedente del Tribunal de Primera Instancia, Sala de Aibonito<br><br>Crim. Núm.:<br>B VI2019G0033<br>B LA2019G0103<br>B LA2019G0104<br><br>Por:<br>Inf. Art. 93-D 1er. Grado CP,<br>Inf. Art. 5.07 Ley de Armas,<br>Inf Art. 5.15 Ley de Armas. |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Marrero Guerrero[1] y la Jueza Díaz Rivera[2].

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2023.

Comparece el apelante, Sr. Steven A. Rodríguez Matías, y nos solicita que revoquemos una *Sentencia* emitida el 9 de diciembre de 2021, por el Tribunal de Primera Instancia, Sala de Aibonito. Mediante dicho dictamen, se sentenció al apelante, luego de que un jurado rindiera un veredicto de culpabilidad el 29 de septiembre de 2021, por infracción de los Arts. 5.07 y 5.15 de la *Ley de Armas* del 2000, 25 LPRA secs. 455 et. sec y del Art. 93(D) del *Código Penal de Puerto Rico*, 33 LPRA sec. 5142.

Por los fundamentos que expondremos a continuación, se *confirma* la Sentencia apelada.

---

[1] Mediante Orden Administrativa OATA-2022-061 se designa al Hon. Ricardo G. Marrero Guerrero en sustitución del Hon. Misael Ramos Torres.
[2] Mediante Orden Administrativa OATA-2022-140 se designa a la Hon. Karilyn M. Díaz Rivera en sustitución del Hon. Roberto J. Sánchez Ramos.

**I**

Por hechos ocurridos el 5 de mayo de 2019, el Ministerio Público presentó tres (3) denuncias en contra del apelante, a saber: un cargo por violación al Art. 99 (d); un cargo por violación al Art. 5.07 de la Ley de Armas; y un cargo por violación al Art. 5.15 de la Ley de Armas. Por los mismos hechos se presentaron denuncias contra el señor Santos Rivera, contra quien se determinó causa en ausencia, pero no había sido arrestado al momento de celebrarse el juicio contra el apelante.

Celebrada la vista preliminar, el Tribunal hizo una determinación de causa probable para juicio en todos los cargos. Oportunamente, el Ministerio Público presentó las acusaciones correspondientes, casos BV12019G0333, BLA2O19GO1O3 al 0104. En dichas acusaciones, se le imputó al apelante lo siguiente:

> Caso núm. BV12019G0333, Art. 93 (d) del Código Penal, supra
> El referido acusado STEVEN ANTHONY RODRIGUEZ MATIAS C/P TETA, allá en o para el día 5 DE MAYO DE 2019 en Aibonito, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Aibonito, ilegal, voluntaria, criminal , intencionalmente [sic], a propósito o con conocimiento dio muerte a JORGE JUAN ROLON ALVARADO, al disparar un arma de fuego en Calle Baldorioty Intersección con la Calle Ramón Flores, en el pueblo de Aibonito, perteneciente al Gobierno de Puerto Rico, siendo la misma, un lugar público o abierto al público, con claro menosprecio de la seguridad pública. CERTIFICACION DE MUERTE PAT-1760-19.
>
> Caso núm. BLA2O19GO1O3, Art. 5.07 de la derogada Ley Núm. 404-2000. Supra
> El referido acusado STEVEN ANTHONY RODRIGUEZ MATIAS C/P TETA, allá en o para el día 5 DE MAYO DE 2019 en Aibonito, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Aibonito, ilegal, voluntaria, criminalmente, portó, poseyó y/o usó sin autorización de esta Ley un arma larga semiautomática COLOR NEGRA, LARGA, un rifle, así como cualquier modificación de éstas o cualquiera otra arma que pueda ser disparada automáticamente, o escopeta de cañón cortado a menos de dieciocho (18) pulgadas, la cual es capaz de causar grave daño corporal. Utilizando dicha arma color negra larga, en la comisión del delito de Infracción Artículo 93, Código Penal e Infracción Artículo 5.15, Ley de Armas en contra de JORGE JUAN ROLON ALVARADO.

<u>Caso núm. BLA2O19GO1O4, Art. 5.15 de la derogada Ley Núm. 404-2000, supra</u>

El referido acusado STEVEN ANTHONY RODRIGUEZ MATIAS C/P TETA, allá en o para el día 5 DE MAYO DE 2019 en Aibonito, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Aibonito, ilegal, voluntaria, criminalmente disparó un arma de fuego, COLOR NEGRA, LARGA, en un sitio público o en cualquier otro sitio donde hubo alguna persona que pudo sufrir o sufrió daño. Consistente dichas acciones en que el acusado le disparó a la persona de JORGE JUAN ROLON ALVARADO, ocasionándole la muerte.

Una vez culminado el proceso de *desinsaculación de jurado,* el desfile de prueba del Juicio en su Fondo se llevó a cabo los días 30 de agosto, 3, 8, 15, 22, 27 y 29 de septiembre de 2021. Luego de escuchados los testimonios de los testigos y evaluada la totalidad de la prueba que tuvo ante sí, el 29 de septiembre de 2021, el Jurado emitió un veredicto de culpabilidad en todos los cargos imputados al apelante. Ese mismo día, el Tribunal de Primera Instancia aceptó los veredictos y declaró al apelante culpable.

Posteriormente, el 9 de diciembre de 2021, se llevó a cabo la Vista de Imposición de Sentencia. Mediante el dictamen, el Tribunal de Primera Instancia sentenció al apelante de la siguiente forma: por el Art. 93-D 1er Grado del Código Penal, supra, noventa y nueve (99) años de cárcel, consecutiva con las penas impuestas en los casos BLA2019G0103 y BLA2019G0104; por el Art. 5.15 de la Ley de Armas, supra, un (1) año duplicada a dos (2) años de cárcel en virtud del Art. 7.03 de la Ley de Armas, consecutiva con las penas impuestas en los casos BLA2019G0103 y BVI2019G0033 y, por el Art. 5.07 de la Ley de Armas, supra, dieciocho (18) años duplicada a treinta y seis (36) años de cárcel en virtud del Art. 7.03 de la Ley de Armas, consecutiva con las penas impuestas en los casos BLA2019G0104 y BVI2019G0033.

Inconforme con la *Sentencia,* el 27 de diciembre de 2021, el apelante acudió a este Foro apelativo intermedio y señaló la comisión de los siguientes errores:

Erró el Honorable Tribunal de Primera Instancia al permitir que el Ministerio Público no presentase la foto del testigo Robin Báez al panel de jurados número 4, y en cuanto a todos los paneles la foto del Sr. Jorge Luis Rolón, durante el proceso de selección de Jurado, esto a pesar de que la defensa levantó oportunamente su objeción en cuanto a la deficiencia del Ministerio Público, lo que violó el debido procedimiento de ley del acusado.

Erró el Honorable Tribunal de Primera Instancia al permitir que el acusado fuera identificado por los testigos de fiscalía sin que a éste se le requiriese quitarse la mascarilla, contrario a como se hizo en el momento de selección de jurado, por lo que la identificación del acusado en el juicio fue defectuosa y violó el debido proceso de ley.

Erró el Honorable Tribunal de Primera Instancia al aceptar un veredicto de culpabilidad que es contrario a la prueba presentada por el patólogo forense quien estableció que los impactos de bala recibidos por el occiso provinieron de alguien que le disparó desde la parte de atrás y no desde el frente del cuerpo donde se encontraba el acusado.

Erró el Honorable Tribunal de Primera Instancia al no suprimir la confesión del acusado la cual fue producto del requerimiento del Fiscal Víctor Casiano Cosme en una celda del tribunal, luego de celebrada la vista de causa probable, momento en el cual el acusado no contaba con representación legal y no le hizo las advertencias que exige nuestro ordenamiento jurídico.

Erró el Honorable Tribunal de Primera Instancia al permitir que se le mostrase al jurado en el proceso deliberativo, un video que había sido admitido condicionalmente como evidencia ilustrativa y demostrativa, sin que en dicho momento estuviese la testigo con la cual se presentó ese video.

El 29 de marzo de 2023, El Pueblo de Puerto Rico acudió ante nos mediante su Alegato. Con el beneficio de contar con las comparecencias de las partes, procedemos a resolver el recurso que nos ocupa.

## II

### A. La desinsaculación del jurado

La Constitución del Estado Libre Asociado de Puerto Rico dispone expresamente que "[e]n los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito..." Art. II, Sec. 11,

Const. ELA, LPRA, Tomo 1. Por su parte, la Constitución de los Estados Unidos de América codifica el derecho a juicio en jurado en casos criminales en su Sexta Enmienda: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[...]." Emda. VI, Const. EE. UU., LPRA, Tomo 1.

Asimismo, el derecho a un juicio por jurado en casos penales se reconoció, mediante el proceso de incorporación selectiva, como uno fundamental aplicable a los estados por medio de la Decimocuarta Enmienda de la Constitución. *Duncan v. State of La.*, 391 US 145, 149 (1968). Por esa razón, el proceso de seleccionar el jurado conocido como *desinsaculación,* tiene unas exigencias constitucionales. Esas exigencias se manifiestan en el requisito de (1) representatividad del grupo de candidatos a jurados entre los cuáles se van a seleccionar los jurados que juzgarán al acusado y los suplentes, conocido como *venire*; (2) las recusaciones perentorias y motivadas y (3) el requisito de que los jurados sean vecinos del distrito donde se alega que se cometió el delito.

En *Pueblo v. Jiménez Hernández,* 116 D.P.R. 632, 635 (1985), nuestro Tribunal Supremo señaló que "[n]o hay duda de que el procedimiento de desinsaculación del jurado es una de las etapas más críticas e importantes de un juicio criminal por cuanto el mismo es uno de los mecanismos mediante los cuales se pretende garantizar que el jurado que intervendrá en el proceso como juzgador supremo de los hechos será uno imparcial, capacitado y libre de prejuicios." *Duncan v. Louisiana,* 391 U.S. 145, 151 (1968); *Connors v. United States*, 158 U.S. 408 (1985).

Como es sabido, la desinsaculación del jurado está regulada por las Reglas de Procedimiento Criminal de Puerto Rico, 34 LPRA, Ap. II. Estas reglas contienen una serie de salvaguardas para que

tanto la Defensa como el Ministerio Público puedan seleccionar como jurados personas que han de juzgar la causa de manera imparcial. A los fines de seleccionar un jurado imparcial, tanto el Juez que preside los procedimientos, como las partes deben indagar durante el proceso de desinsaculación sobre si existe algún viso de imparcialidad en los candidatos a jurados. Esto incluye cualquier tipo de relación entre los candidatos con cualquiera de las partes o testigos.

No obstante, lo anterior, las Reglas de Procedimiento Criminal no contienen una exigencia legal para que el Ministerio Público presente en persona a todos los testigos de cargo como paso indispensable para que comience el proceso. *Pueblo v. Rivera Santiago, 176 DPR 559 (*2009). Lo anterior quiere decir que, independientemente estén presentes o no los testigos de cargo al momento de desinsaculación del jurado, el TPI tiene la obligación de procurar que un acusado de delito tenga un juicio justo. A esos efectos, nuestro más Alto Foro expresó lo siguiente:

> *[e]n nuestro Ordenamiento Jurídico, existen mecanismos que permitirían evitar la selección de algún jurado indeseado por estar relacionado de alguna manera con un testigo, sin requerir la presencia de este último. Así, por ejemplo, el propio "procedimiento de desinsaculación", (voir dire), le permite a las partes y al juez indagar con preguntas a los potenciales miembros del jurado, para así evitar la selección de un candidato a jurado que pueda tener su juicio obnubilado o denote visos de parcialidad. Véanse, Pueblo v. Hernández Delgado, 116 DPR 427 (1990); Pueblo v. Jiménez Hernández, 116 DPR 632 (1985)...Precisamente, esa es la razón de ser de la Regla 119 de Procedimiento Criminal, 34 LPRA Ap. II, la cual autoriza tanto al magistrado que preside el proceso, y a los abogados de las partes para que formulen a los candidatos potenciales a jurados las preguntas que entiendan pertinentes a su capacidad para actuar. Pueblo v. Jiménez Hernández, supra, págs. 637-638. Por eso, un voir dire pormenorizado por parte del juez y los respectivos representantes legales de las partes, subsana la ausencia física de todos los testigos al momento de la selección del jurado.*
>
> *Además, hay otras salvaguardas para que el veredicto que emita el jurado sea imparcial. Las Reglas 126 y*

> *127 de Procedimiento Criminal, 34 LPRA Ap. II, proveen para que el tribunal discrecionalmente ordene que se llame a uno o más jurados suplentes. Estos se podrán utilizar en cualquier momento anterior al sometimiento final del caso al jurado, si uno de los jurados muriese, se enfermase o tuviese que ser relevado por causa suficiente. De igual manera, la Regla 144(d) de Procedimiento Criminal 34 LPRA Ap. II, dispone que el tribunal podrá ordenar la disolución del jurado antes del veredicto si se comete algún error de derecho o se incurre en alguna irregularidad durante el proceso que, a juicio del tribunal, le impida al jurado rendir un veredicto justo e imparcial. Como señala el Profesor Chiesa: "[e]sta regla constituye el vehículo estatutario para hacer valer el derecho del acusado a la terminación del juicio cuando la continuación es incompatible con el concepto de "jurado 'imparcial' componente esencial del derecho constitucional a juicio por jurado". E.L. Chiesa, op. Cit, Vol. II, sec. 15.5 pag. 322. De esta forma, si el problema surge con un miembro del jurado en particular, no debe disolverse al jurado si hay jurados suplentes o si el acusado renuncia válidamente al jurado de doce miembros. Id.*

> *De lo anterior podemos razonar que, luego de que los jurados pasan el cedazo de la desinsaculación, si surge que alguno de ellos no puede ser completamente imparcial por estar o haber estado relacionado de alguna manera con algún testigo, dicho jurado puede sustituirse con un suplemente. De no poderse dar la sustitución por carencia de suplentes, entonces queda disponible la vía de la disolución del jurado como remedio final para preservarle al acusado su derecho a un juicio justo e imparcial. Pueblo v. Rivera Santiago, supra, págs. 585-587.*

Nuestro más alto foro, reiteradamente ha reconocido dos (2) métodos de seleccionar y juramentar al jurado, que son el método corto y el largo. En el método corto se examina a cada candidato y de no ser recusado por alguna de las partes, éste queda seleccionado automáticamente para formar parte del jurado, sin poder ser recusado posteriormente por las partes, aunque estos no hayan agotado sus recusaciones. Una vez concluida la ronda de desinsaculación, se toma el juramento definitivo a los jurados.

Mientras que en el método largo se examinan varias rondas de jurado y una vez concluidas las recusaciones motivadas y agotadas las recusaciones perentorias a las que se tiene derecho, queda constituido de esa forma el jurado al que se le toma juramento

definitivo. A diferencia del método corto, donde una vez el candidato no es recusado por alguna de las partes éste automáticamente pasa a formar parte del jurado, en el método largo las partes si pueden recusar a un candidato examinado en alguna ronda anterior. *Pueblo v. Romero Rodríguez*, 112 D.P.R. 437, 444-445 (1982); E.L. Chiesa, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1993, Vol. III, Sec. 30.5, págs. 394-395.

Según lo ha expresado nuestro más alto foro, existe una predilección por el método largo para la desinsaculación del jurado sobre el método corto. *Pueblo v. Morales Acosta*, 66 D.P.R. 10, 15 (1946); *Pueblo v. Torres Rivera*, 48 D.P.R. 39, 46 (1935). Aunque el tribunal de instancia tiene discreción para elegir el método a utilizar para desinsacular al jurado. *Pueblo v. Vázquez*, 68 D.P.R. 67, 73 (1948); *Pueblo v. Torres Rivera, supra*, a la pág. 46. Lo importante es que una vez se elige un método y se inicia el procedimiento de desinsaculación bajo ese método, el tribunal deberá continuar utilizando el método hasta concluir con la desinsaculación del jurado. *Pueblo v. Romero Rodríguez, supra*, a la pág. 446.

Una vez seleccionado el *petit jury,* esto es los jurados que adjudicarán la causa, la función de éste es recibir la prueba y aplicar a esa prueba el derecho que corresponda, según impartido en las instrucciones al jurado que haga el juez que preside los procedimientos. Finalmente, cabe señalar que el Tribunal Supremo de Puerto Rico tuvo la oportunidad de definir la función del jurado en nuestro ordenamiento jurídico en *Pueblo v. Echevarría, 128 DPR 299, 337-338 (1991).* A esos fines, expresó lo siguiente:

> *"La opción de un juicio ante un panel de jurados implica conferir a éstos la administración de la justicia, esto es la determinación final sobre culpabilidad. El Jurado, compuesto por una muestra representativa de la comunidad del acusado tiene como encomienda evaluar la prueba, recibir instrucciones sobre el derecho aplicable, deliberar en secreto y rendir un veredicto final. De entender el Jurado que el acusado incurrió en responsabilidad criminal por los hechos*

*que se le imputan deberá determinar el delito específico o el grado del mismo, por el cual éste deberá responderle a la sociedad".*

## B. La identificación del acusado

La identificación del acusado es una de las etapas más esenciales o críticas en el procedimiento criminal, pues no puede haber una convicción sin prueba que "conecte" o "señale" al imputado de delito, como el responsable de los hechos delictivos. Es decir, para que una persona acusada de la comisión de un crimen pueda tener un juicio justo e imparcial, el Estado debe garantizarle que su identificación como autor del delito imputado es confiable y legítima, tal como lo exige el Artículo II, Sección 11, de la Constitución del Estado Libre Asociado de Puerto Rico. Véase a *Pueblo v. Gómez Incera*, 97 D.P.R. 249, 252 (1969), seguido en *Pueblo v. Rodríguez Maysonet*, 119 D.P.R. 302, 309 (1987). Incluso, la falta de una identificación confiable constituye una violación al debido proceso de ley del acusado. *Pueblo v. Hernández González*, 175 D.P.R. 274, 286 (2009).

Como los mayores extravíos en la administración de la justicia criminal lo ocasionan los errores en la identificación del acusado, pues "evidencia de identificación es la evidencia de opinión por excelencia", el Tribunal Supremo adoptó la doctrina que ordena "la supresión de toda prueba de identificación fruto de un procedimiento tan viciado que, como cuestión de derecho, haga constitucionalmente inadmisible la identificación por violar el debido proceso de ley." *Pueblo v. Gómez Incera*, 97 D.P.R. en las págs. 251-252 y 257. No obstante, la determinación de si se ha violado este derecho depende de la **totalidad de las circunstancias** que rodearon el procedimiento o método utilizado para la identificación.

En ese sentido, nuestro Alto Foro ha reiterado que el posible efecto corruptor de un procedimiento innecesariamente sugestivo

deberá sopesarse contra los siguientes factores: (a) la oportunidad que tuvo el testigo de ver al criminal durante la comisión del delito; (b) el grado de atención del testigo; (c) la precisión de la descripción del perpetrador que haga el testigo; (d) el grado de certeza que demuestre el testigo durante la rueda de detenidos y (e) el lapso de tiempo que ha transcurrido entre el crimen y la identificación. *Pueblo v. Ortiz Pérez*, 123 D.P.R. 216, 224 (1989); *Pueblo v. Hernández González*, 175 D.P.R. en la pág. 292.

Por otro lado, la evaluación sobre el método utilizado para identificar a un acusado es una cuestión estrictamente de derecho que atañe a la admisibilidad de la prueba de identificación. Ahora bien, una vez admitida por el tribunal, **la confiabilidad de la prueba de identificación, al igual que la credibilidad que merezca el resto de la prueba del Estado, es un asunto que deberá dirimir el Jurado**. *Pueblo v. Peterson Pietersz*, 107 D.P.R., en las págs. 183-184.

### C. Apreciación de la Prueba

El Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico, Art. II Const. ELA, LPRA, Tomo 1, garantiza a todo acusado de delito el derecho fundamental a la presunción de inocencia durante todo proceso criminal. Ese derecho constituye uno de los imperativos del debido proceso de ley, según lo ha reconocido nuestro más alto foro en múltiples ocasiones. *Pueblo v. Rodríguez Pagán*, 182 DPR 239 (2011). Además, y de manera más específica, la Regla 110 (F) de Procedimiento Criminal, 34 LPRA Ap. II, dispone que, en los casos criminales, la culpabilidad de la persona debe ser establecida más allá de duda razonable. Es el Ministerio Público quien tiene la obligación de presentar evidencia para cumplir con la carga probatoria de establecer la culpabilidad del acusado. Dicho de otra forma, el Ministerio Público tiene que probar más allá de duda razonable todos los elementos del delito, la

intención o negligencia criminal en su comisión y la conexión de la persona acusada con los hechos. *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).

No obstante, lo anterior, es necesario señalar que la duda razonable no es una duda especulativa ni se extiende a cualquier duda posible. El Tribunal Supremo de Puerto Rico ha definido como *duda razonable* aquella duda fundada que surge como el raciocinio de todos los elementos de juicio envueltos en un caso. Nuestro más alto Foro ha expresado además que, para poder rebatir la presunción de inocencia, el Ministerio Público deberá probar cada uno de los elementos del delito imputado y producir certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Bigio Pastrana*, 116 DPR 748 (1985), *Pueblo v. Cruz Granados*, 116 DPR 3 (1984); *Pueblo v. Irizarry*, 156 DPR 780 (2002).

Ahora bien, en nuestro ordenamiento jurídico es norma reiterada que, al enfrentarnos a la tarea de revisar la suficiencia de la prueba en convicciones criminales, nuestra función revisora está enmarcada dentro de unas consideraciones que nos limitan. Como es sabido, al momento de revisar las determinaciones que realizan los juzgadores de primera instancia, ya sea Juez o Jurado, debemos otorgarle una gran deferencia en cuanto a la prueba testifical presentada ante ellos. La regla general es que el tribunal revisor no debe intervenir con la adjudicación de credibilidad de los testigos ni sustituir las determinaciones de hechos basadas en las apreciaciones de esa prueba. *Pueblo v. Toro Martínez*, 200 DPR 834 (2018). Además, el veredicto del jurado, como la sentencia del juez, es un acto investido con la alta dignidad de la magistratura en la función juzgadora de la conducta de los hombres, y no es para echarse a un lado con liviandad e indiferencia. *Pueblo v. Figueroa Rosa*, 112 DPR 154 (1992).

La norma expuesta descansa en el hecho de que los foros de instancia están en mejor posición para evaluar la prueba desfilada, pues tienen la oportunidad de observar y escuchar a los testigos y, por ello, su apreciación merece gran respeto y deferencia. *Pueblo v. Acevedo Estrada, supra; Pueblo v. Rosario Reyes*, 138 DPR 591 (1995).

Claro está, a pesar de que la determinación de culpabilidad hecha por el juzgador de los hechos merece gran deferencia, ésta podrá ser revocada en apelación si se demuestra que hubo pasión, prejuicio o parcialidad y/o si se incurre en error manifiesto debido a que la prueba no concuerda con la realidad fáctica o es increíble o imposible. *Pueblo v. Maisonave, 129 DPR 49 (1991); Pueblo v. Acevedo Estrada,* supra, pág. 99. Así, pues, a menos que existan los elementos antes mencionados o que la apreciación de la prueba se distancie de la realidad fáctica o ésta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con la apreciación de la prueba hecha por el juzgador de los hechos. *Pueblo v. Maisonave Rodríguez, supra.*

En el caso *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013), el Tribunal Supremo de Puerto Rico tuvo la oportunidad de definir lo que es pasión, prejuicio o parcialidad y error manifiesto. A esos efectos, expresó que se incurre en pasión, prejuicio o parcialidad cuando se actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna." Por su parte, las determinaciones del foro revisado son un error manifiesto si de un análisis de la totalidad de la evidencia, el foro revisor queda convencido de que se cometió un error porque las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida

debido a que se distancian de la realidad fáctica o es inherentemente imposible o increíble. *Dávila Nieves v. Meléndez Marín*, supra, pág. 772.

Finalmente, en cuanto a la cantidad de prueba requerida para sostener una convicción, es necesario acudir a la Regla 110 de Evidencia, 32 LPRA Ap. VI. Conforme al inciso (D) de la referida Regla "la evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley." Es por ello por lo que el testimonio de un sólo testigo, de ser creído por el juzgador de los hechos, es suficiente para sustentar una convicción ya que no se trata de un análisis de cantidad.

### D. Derecho a la no autoincriminación

El derecho a la no autoincriminación surge, en primer lugar, de la Enmienda Quinta de la Constitución de los Estados Unidos de América, la cual establece que "[n]inguna persona (...) será compelid[a] en ningún caso criminal a declarar contra sí mismo (...)" De igual forma, nuestra Constitución reconoce el derecho a la no autoincriminación.

La Sección 11 del Artículo II de nuestra Constitución dispone que "[n]adie será obligado a incriminarse mediante su propio testimonio y el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra." Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo I. Dicha protección constitucional pretende evitar que las personas sean sometidas al conflicto de decidir si mienten o se incriminan o si declaran o no, a la vez que promueve que el Estado lleve a cabo sus investigaciones criminales civilizadamente. *Pueblo v. Sustache Torres*, 168 D.P.R. 350, 354 (2006). Este derecho ha sido reconocido como uno de los más trascendentales y fundamentales del derecho penal practicado en un sistema democrático de

gobierno. *Pueblo en interés menor J.A.B.C.*, 123 D.P.R. 551, 556 (1989).

Esta protección constitucional, complementada por la extensa doctrina jurisprudencial desarrollada a partir de *Miranda v. Arizona*, 384 U.S. 435 (1966), ampara a una persona desde el momento en que una investigación policial de los hechos delictivos se centra en ella como sospechosa, se encuentra efectivamente detenida y bajo la custodia del estado y expuesta a ser interrogada por agentes del Estado. A partir de ese momento, y sólo si concurren esas circunstancias, es indispensable que se le advierta a la persona a quien el Estado pretende interrogar, de su derecho a permanecer callada, de que cualquier declaración que haga podrá y será utilizada como evidencia en su contra, y su derecho a ser asistido por un abogado de su elección, o en su defecto, uno asignado por el Estado. *Pueblo v. Millán Pacheco*, 182 D.P.R. 595, 610 (2011), *Pueblo v. López Rodríguez*, 118 D.P.R. 515 (1987).

En *Pueblo v. Millán Pacheco, supra*, el Alto Foro reiteró que la razón de la decisión de *Miranda v. Arizona, supra*, fue reducir al mínimo el riesgo de que se produzcan confesiones bajo coerción. Para lograr este objetivo, el Tribunal Supremo Federal concluyó que era necesario que el sospechoso y/o acusado estuviera informado de manera adecuada y efectiva de sus derechos. *Íd,* a la pág. 610. Para determinar si las advertencias Miranda se le hicieron a la persona acusada o sospechosa eficazmente es necesario tomar en consideración "la totalidad de las circunstancias" que rodean la confesión. *Pueblo v. Viruet Camacho*, 173 D.P.R. 563, 574 (2008). Entre las circunstancias que se deben evaluar se encuentra el periodo de tiempo que el sospechoso o el acusado estuvo bajo custodia policiaca antes de prestar la confesión, la conducta policiaca mientras estuvo bajo custodia y si el sospechoso o acusado estuvo asistido por un abogado al hacer su confesión. *Íd*. Igualmente

el tribunal tomará en consideración si la renuncia al derecho a la no autoincriminación fue una voluntaria. Así, una renuncia al derecho a la no autoincriminación es voluntaria cuando se realiza sin la mediación de coacción o violencia por parte de los funcionarios del Estado en el procedimiento que culmina en la toma de la confesión. *Pueblo en interés menor J.A.B.C., supra,* a la pág. 561.

Para que la confesión efectuada sea admisible en evidencia, le corresponde al Estado probar que fue hecha de manera libre y voluntaria mediante una renuncia válida e informada de los derechos constitucionales. *Pueblo v. Viruet Camacho, supra,* a la pág.575, *Pueblo v. Pellot Pérez,* 121 D.P.R. 791, 802 (1988). Ello quiere decir, que es el Estado quien tiene que demostrar que la renuncia al derecho a la no autoincriminación fue una voluntaria, inteligente y consciente. *Pueblo v. Pellot Pérez, supra.* Para probar lo anterior es necesario que se presente prueba detallada sobre las advertencias específicas que se le hicieron al sospechoso o al acusado sobre las condiciones imperantes en el momento en que se llevó a cabo la confesión o la admisión. *Pueblo v. Medina Hernández,* 158 D.P.R. 489, 509 (2003). Si el Estado no logra satisfacer la carga probatoria, entonces procede la supresión de cualquier declaración incriminatoria hecha por el acusado, evitando así una violación al derecho constitucional a la no autoincriminación que cobija a todo ciudadano. *Pueblo v. Millán Pacheco, supra,* a la pág. 612.

### E.  La autenticación y admisión de la evidencia

En el ámbito del derecho probatorio, nuestro ordenamiento jurídico establece que, para que sea admisible la evidencia presentada, además de pertinente, debe ser autenticada. Así, para que una evidencia sea admitida, la parte proponente viene obligada a efectuar su autenticación. *Pueblo v. Bianchi Álvarez,* 117 DPR 484 (1986). La Regla 901 de Evidencia, *supra,* R.901, contiene una

lista, no taxativa, de métodos para autenticar la evidencia, "por lo que la autenticación no tiene que realizarse mediante un método específico". *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 813 (2020).

A estos efectos, la Regla 901 (A) de Evidencia, *supra*, R. 901 (A), dispone que "[e]l requisito de autenticación o identificación como una condición previa a la admisibilidad se satisface con la presentación de evidencia suficiente para sostener una determinación de que la materia en cuestión es lo que la persona proponente sostiene". Autenticar una pieza de evidencia es probar que la misma es lo que su proponente alega que es. *Rosado Reyes v. Global Healthcare, supra*, pág. 812; *Pueblo v. Echevarría Rodríguez I, supra*. Véase, además, Chiesa Aponte, *op. cit.*, pág. 345.

### F. Evidencia ilustrativa

La evidencia demostrativa ilustrativa es aquella que "únicamente es para enseñar, instruir, representar o hacer más comprensible un testimonio u otra evidencia". *Pueblo v. Rivera Nazario*, 138 DPR 760, 774 (1995). Nuestro Foro Judicial Máximo explicó que:

> *"En el caso de la evidencia ilustrativa, cuyo fin es ilustrar o clarificar un testimonio, como por ejemplo un croquis, un chart, una fotografía, lo único que el proponente debe establecer es que tal evidencia es de ayuda al juzgador para entender otra evidencia, particularmente el testimonio de un testigo. En estos casos el origen de la evidencia ilustrativa tiene poca o ninguna importancia. [...] Lo único importante es que el tribunal entienda que la evidencia ilustrativa hace más comprensible la otra evidencia." Íd.; Chiesa, P.P.R., Evidencia, pág. 514, escolio 44.*

Una fotografía es "una reproducción fiel y exacta de la persona, sitio o cosa". *In Re Colton Fontan*, 128 DPR 1, 95 (1991); *Pueblo v. Márquez, 67 DPR 326, 335 (1947)*. Su valor intrínseco se halla en "su capacidad de perpetuar, de manera objetiva, múltiples detalles". Esto es, "[p]or su naturaleza tangible, las fotografías

describen mejor que las palabras" y, contrario a lo que ocurre con el testimonio oral de un testigo, "no descansan en una 'memoria pobre o falible'". *In Re Colton Fontan, supra.* El valor probatorio de las fotografías se encuentra cuando se presentan, entre otros fines, para "ilustrar los hechos esenciales sobre los cuales han declarado los testigos". *Pueblo v. Rivera Nazario, 141 DPR 865, 894* (1996); *Pueblo v. López Rodríguez, 118 DPR 515, 543 (1987).* Tanto las fotografías como el video perpetúan hechos con una certeza, eficiencia y confiabilidad que excede la capacidad normal humana. *Pueblo v. Luzón, 113 DPR 315, 326 (1982).*

La autenticación de la evidencia va a depender de si es evidencia real o evidencia ilustrativa. En los casos de evidencia real, el procedimiento de autenticación será diferente al proceso de autenticación de evidencia ilustrativa. "*Hay mucho más rigor en la evidencia real,* pues hay que satisfacer [el requisito de] mismidad [establecido en] la Regla 901(A)." Chiesa Aponte, Reglas de Evidencia Comentadas, Ediciones SITUM 2016, pág. 394.

Igualmente, Emmanuelli nos explica que:

> *[c]uando se trata de evidencia real, la autenticación es crítica, ya que generalmente es indispensable para establecer los hechos en controversia. Para autenticar este tipo de evidencia debe recurrirse principalmente a la Regla 901. Es necesario establecer que dicha evidencia es justamente lo que el proponente sostiene. Ahora bien, cuando se trata de evidencia ilustrativa, lo que se debe establecer para autenticarla es que servirá de ayuda, explicación o ilustración al juzgador de hechos al evaluar la prueba o los testimonios. En este sentido, cuando se trata de autenticar una fotografía a los fines de mostrar la condición en que quedaron los vehículos luego de una colisión, lo que debe establecer el proponente es que la fotografía refleja fiel y razonablemente la condición en que quedaron los vehículos luego de la colisión. No es necesario establecer quién tomó la fotografía, que tipo de máquina fotográfica utilizó, etc. Solamente se requiere establecer que la fotografía es útil para hacer la determinación sobre la ocurrencia y circunstancias del accidente. Lo dicho en cuanto a la fotografía también es aplicable a los videos o películas. Emmanuelli*

*Jiménez, <u>Prontuario de Derecho Probatorio Puertorriqueño</u>, Ed. SITUM, 2016, pág. 611.*

Por su parte, en la autenticación de la evidencia real se requiere una rigurosidad mayor, el Tribunal Supremo de Puerto Rico ha establecido que "no todo tipo de evidencia real demostrativa requiere que se establezca su autenticidad por medio de una "cadena de custodia" como condición previa a su admisibilidad. Cuando se ofrecen en evidencia objetos que son fácilmente identificables, ya sea porque poseen unas características distintivas o porque tienen un número o marca particular, no es imprescindible establecer la cadena de custodia para su admisión en evidencia". *Pueblo v. Echevarría Rodríguez I*, 128 DPR 299, 349 (1991); *Pueblo v. Carrasquillo Morales*, 123 DPR 690, 699 (1989).

**III**

En el primer señalamiento de error, el apelante alega que erró el Tribunal de Primera Instancia porque no se le presentó la foto del testigo Robin Báez al panel de jurado número 4. Añade, que tampoco se le presentó la foto del testigo Jorge Luis Rolón a ningún panel de jurados. Indica, que el no haber presentado las referidas fotografías, violó su debido proceso de ley.

Según señalamos anteriormente, la función de un jurado es recibir la prueba y aplicar a esa prueba el derecho que corresponda. Por su parte, la finalidad del proceso de desinsaculación del jurado es que las partes seleccionen los candidatos idóneos que, a su juicio entiendan, han de juzgar la causa de manera imparcial.

En el presente caso, como parte de la desinsaculación del jurado, hubo varios testigos de cargo que fueron presentados ante el jurado. Algunos de los testigos de cargo fueron presentados de manera presencial y otros mediante fotografía. Sin embargo, los testigos Robin Báez y Jorge Luis Rolón no fueron presentados a los candidatos, ni presencial, ni mediante fotografía, a todos los

candidatos **durante el proceso de desinsaculación**. Específicamente, el testigo Robin Báez no fue presentado al Panel 4 de candidatos durante el proceso de desinsaculación y el testigo Jorge Luis Rolón no fue presentado **a ninguno de los paneles de candidatos a jurados durante dicho proceso**.

No obstante, durante dicho proceso, tanto el juez como la defensa y el Ministerio Público realizaron preguntas para depurar los candidatos a jurado. En ese momento tuvieron la oportunidad de hacer las preguntas que entendieron necesarias para identificar algún viso de parcialidad en los candidatos a jurado. En efecto, a pesar de que el testigo Robin Báez no fue presentado ante el Panel 4 durante la desinsaculación, el juez que presidió los procedimientos preguntó si alguien conocía al testigo. Incluso, dos de los candidatos contestaron que lo conocían y fueron recusados por las partes[3].

Es preciso señalar, que no surge del expediente ante nuestra consideración cuántos de los jurados escogidos finalmente pertenecían al panel 4. Tampoco surge que cuando el testigo Robin Báez se sentó a declarar, algún jurado haya manifestado conocerlo. Finalmente, la defensa no nos puso en condición de concluir que el apelante sufrió algún perjuicio como consecuencia de que no se presentara la fotografía del testigo en el momento de la desinsaculación. Por lo tanto, el apelante no nos puso en condición de concluir que no fue juzgado por un jurado imparcial. El primer error no fue cometido.

Como segundo error, el apelante señala que la identificación del acusado en el juicio fue defectuosa debido a que no se le requirió quitarse la mascarilla al momento de ser identificado por los testigos de cargo. No obstante, del expediente de autos no surge que el apelante haya objetado su identificación con mascarilla en sala por

---

[3] Véase TPO, págs. 663-673.

parte de los testigos de cargos. Por el contrario, es un señalamiento que se trae por primera vez en el escrito de apelación presentado ante este foro revisor. Como es sabido, los foros revisores no resolverán ninguna cuestión que no haya sido oportunamente planteada y resuelta previamente por el tribunal cuta sentencia se apela. Véase *Vera v. Dr. Bravo, 161 DPR 308, 335 (2004).* Ante ello, este Tribunal de Apelaciones está impedido de atender el segundo señalamiento de error, pues no fue un asunto planteado y resuelto por el Tribunal de Primera Instancia.

Señala también el apelante, que el Tribunal de Primera Instancia erró al aceptar un veredicto de culpabilidad que es contrario a la prueba presentada por el patólogo forense. Añade que el patólogo forense estableció que las heridas de bala recibidas por el occiso provinieron de alguien que le disparó desde la parte de atrás y no desde el frente del cuerpo donde se encontraba el acusado.

En síntesis, el apelante señala que el veredicto del jurado ignora el hecho de que existe una incongruencia entre el testimonio de los testigos que ubican al acusado frente al occiso y el testimonio pericial del Patólogo Forense. Conforme argumenta el apelante, en la discusión de su tercer señalamiento de error, las conclusiones del patólogo forense deben examinarse en conjunto con el testimonio de los testigos de cargo. Veamos.

De conformidad con nuestro ordenamiento jurídico, este Tribunal debe examinar si hubo algún prejuicio, pasión, imparcialidad o error manifiesto por parte del jurado al aquilatar la prueba desfilada. Concluimos que no. Los testimonios de los testigos de cargo, según creídos por el jurado, no son necesariamente incompatibles entre sí. En el presente caso, las conclusiones no están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida y creída

por el jurado, ni se distancian de la realidad fáctica o es inherentemente imposible o increíble. Tampoco se nos ha puesto en condición de concluir que el jurado actuó con pasión, prejuicio o parcialidad al momento de aquilatar la prueba. En consecuencia, concluimos que el tercer señalamiento de error no fue cometido.

De otra parte, en el cuarto señalamiento de error, señala el apelante que erró el Honorable Tribunal de Primera Instancia al no suprimir la confesión del acusado. Sostiene el apelante, que ésta fue producto del requerimiento del Fiscal Víctor Casiano Cosme en una celda del tribunal, luego de celebrada la vista de causa probable cuando el apelante no tenía representación legal. No le asiste la razón.

En primer lugar, debemos señalar que, si bien es cierto que el Fiscal Víctor Casiano Cosme se dirigió al apelante cuando éste estaba en la celda del tribunal, sin abogado y luego de haberse determinado causa para arresto, también es cierto que en ese momento no se produjo confesión alguna por parte del apelante. Incluso, de la prueba desfilada y creída por el jurado surge que en ese momento el fiscal le pide que no hable[4].

Se desprende del expediente ante nuestra consideración, que la confesión del apelante se dio en la Fiscalía de Aibonito luego de una renuncia libre y voluntaria a su derecho a la no auto incriminación[5]. El cuarto señalamiento de error, tampoco fue cometido.

Por último, el apelante señala que erró el Tribunal de Primera Instancia al mostrarle al jurado en el proceso deliberativo, un video que había sido admitido como evidencia, sin que en ese momento estuviera presente la testigo con la que se presentó el video.

---

[4] Véase TPO, pág. 11.
[5] Véase TPP, pág. 14, 16, 21-23.

El proceso de autenticación de evidencia es un requisito previo a la admisibilidad de toda evidencia. La rigurosidad de la autenticación dependerá del propósito con el que se ofrece determinada prueba. En el presente caso, el video en cuestión se ofreció y admitió, luego de autenticado, como evidencia ilustrativa del testimonio de la señora Sandra Vega Martínez. Una vez admitido el video, nada impedía que pudiera ser reevaluado por el Jurado en el proceso de deliberación. El quinto error no fue cometido.

## IV.

Por los fundamentos que anteceden, los que hacemos formar parte del presente dictamen, se *confirma* la sentencia apelada.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones